EXPLOSIVE CHEMICAL CO., INC., Plaintiff, *v.* WILLIAM S. GRAY & Co., Defendant.

Municipal Court of the City of New York, Borough of Manhattan, Ninth District, January 14, 1925.

Contracts — assignment — action to recover money paid for defendant — plaintiff assigned to defendant contract to furnish acetone to United States government — contract provided that if drums were returned plaintiff would pay government — invoice by defendant stated drums were not returnable — implied obligation on defendant who received benefits of contract to ·pay plaintiff amount paid government for drums — assignment is valid — plaintiff did not accept defendant's counter offer that drums were not returnable — United States Revised Statutes, § 3477, not applicable to assignment of unexecuted contract — United States Revised Statutes, § 3737, does not apply — not necessary for defendant expressly to promise to carry out terms of contract.

The plaintiff, who had a contract with the United States government to furnish it with acetone in drums, is entitled to recover from the defendant, to whom

it assigned the contract, the amount paid to the United States government for the return drums under a provision in the contract that if the government returned the drums, the plaintiff would pay therefor, for the defendant, by acting under the assignment and receiving the benefits of the contract, became impliedly obligated to pay the contract price for the drums upon the return by the government.

The evidence establishes a valid assignment of the contract, and the defendant cannot be released from its implied obligation by a statement in its invoice of the goods that the drums included were not returnable, for this statement constituted a counter offer which was not accepted by the plaintiff, and the plaintiff's silence in regard thereto is not sufficient to constitute acceptance.

Section 3477 of the United States Revised Statutes, in reference to assignment of claims against the United States government, applies only to the assignment of claims that are liquidated and due and does not apply to the assignment of an unexecuted contract with the United States government, nor does section 3737 of the United States Revised Statutes, which is for the protection of the United States government alone, affect the relation arising between the assignor and the assignee.

It was necessary for the defendant to expressly agree to carry out the terms of the assigned contract in order that he might be held liable on its obligations, for where one assigns a contract to another for a valuable consideration, the assignee becomes bound to carry out the terms of the contract which has been assigned to him, and the law implies a promise that he will do so.

Furthermore, the defendant is under a duty to repay the plaintiff because the plaintiff, as assignor, became only secondarily liable, while the defendant was in effect primarily liable, and consequently the plaintiff, in paying the debt when the defendant did not, was subrogated to the rights which the United States government would have had against the defendant if it had ratified the assignment.

ACTION to recover $684 on account of money paid by the plaintiff to the United States, which plaintiff alleges was paid to the use of and on account of the defendant, and that the defendant was under duty to pay the same.

*Joseph Dannenberg,* for the plaintiff.

*Neuwirth & Buzzell* [*Samuel Jesse Buzzell* of counsel, *Isidore Neuwirth* with him on the brief], for the defendant.

GENUNG, J.:

The facts are as follows: On or about the 12th day of February, 1924, plaintiff entered into a written contract with the United States to supply it with 20,000 pounds of acetone at $.20344 per pound (a total of $4,068.80) to be delivered at the Navy Yard, Brooklyn, New York; delivery to be made in fifty-gallon drums, the price of which was to be included in the cost of the material, and the drums to remain the property of the United States, but if the drums were returned in twelve months by the United States, then the seller was to refund to the United States $12 for each drum so returned. Prior to March 3, 1924, the plaintiff talked to

the defendant, relative to assigning this contract to him, and arrangements were made for the consummation of such an assignment.

On March 3, 1924, plaintiff wrote defendant that he confirmed the arrangement as to assignment, and that it was understood plaintiff should give defendant a legal assignment of the contract, the defendant was to fill the order and pay the plaintiff one cent per pound commission (a total of about $200); in this letter plaintiff inclosed an assignment of the moneys to become due under the contract. On March 4, 1924, the defendant answered the plaintiff's letter, returning the assignment and asking that the plaintiff swear to it before a notary public. The plaintiff returned the assignment on March 5, 1924, but not properly executed. On April 11, 1924, the plaintiff wrote defendant asking that defendant ship the acetone in accordance with the instructions already furnished. The defendant shipped the acetone to the Brooklyn Navy Yard and sent the plaintiff an invoice dated April 15, 1924, which had on it this notation, " Drums included and not returnable." It appears the plaintiff made no subsequent objection to the defendant about this notation. After the United States received the acetone, it paid the plaintiff for the same, the plaintiff paid the money so received to the defendant, who paid the plaintiff $198, the amount of commission agreed upon. On July 2, 1924, the United States demanded that the plaintiff take back the fifty-seven drums in which the acetone had been delivered and pay therefor $12 per drum as per contract, a total of $684. The plaintiff asked the defendant to make this payment, but the defendant refused. Whereupon the plaintiff paid the United States the $684 and now sues the defendant to recover the sum on the ground that the facts placed the defendant under the duty to pay this sum.

While there are certain disputed questions in this case, the preponderance of fact and law is in favor of the plaintiff and recovery must be allowed to it. The evidence shows that the plaintiff's contract with the United States required it to take back and refund on the drums when they were tendered to it; that it assigned this contract to the defendant; that the defendant performed the contract and took all the benefits under it; that the plaintiff was forced to perform the defendant's duty and refund on the drums; that the defendant then must repay the plaintiff either on the theory of obligation to repay implied from the act of assignment or on the theory of subrogation of the plaintiff to whatever rights the United States had or could have had.

There was a valid assignment of the plaintiff's contract with the United States to the defendant because the evidence is undisputed that the defendant had seen the contract before he delivered to the

United States the acetone; the letters sent from the plaintiff to the defendant on March 3 and March 5, 1924, as well as the assignment so sent, show clearly an intent on the plaintiff's part to make a complete assignment of this contract, and the same constitute an unequivocal and not-to-be-misunderstood offer from the plaintiff to the defendant to assign to the defendant the entire contract. The fact that the defendant shipped the goods thereupon is an amply sufficient act of acceptance by the defendant of the plaintiff's offer to assign to make a meeting of the minds on an assignment of plaintiff's contract with the United States and hence a binding contract of assignment. The defendant makes much of the fact that his invoice (defendant's Exhibit E) had written on it the notation, " Drums included and not returnable," and claims that this expressly negatives plaintiff's right to impose the refunding duty on him. But the answer to that is that this invoice containing such notation is at best a counter offer from the defendant to plaintiff, not made until received by the plaintiff, and the plaintiff's silence in regard thereto is not sufficient to constitute acceptance.

The laws of the United States do not, as the defendant contends, invalidate or in any way prevent this assignment from being legal. The defendant contends that section 3477 of the United States Revised Statutes invalidates this assignment. That section reads as follows: "All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments and powers of attorney, must recite the warrant for payment and must be acknowledged by the person making them, before an officer having authority to take acknowledgments of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgment, read and fully explained the transfer, assignment or warrant of attorney to the person acknowledging the same."

As a matter of fact, this section does not apply to the case at bar, because it is the case of an assignment of contract, whereas as shown by a number of Federal cases, section 3477 applies only to the assignment of naked claims. The defendant cites a number

of such cases of assignment of naked claims where it was held that such assignments were void.

*Emmons* v. *The United States* (189 Fed. 414, 415) interprets section 3477 as follows: " The Supreme Court has frequently had occasion to consider this section, and the holding is that the intent of Congress as expressed therein was that a voluntary assignment of naked claims against the government for the purposes of suit   *   *   *   or otherwise, should not be countenanced."

As the cases show, by naked claims is meant claims against the government which are already liquidated and due, and not cases where, as in the case at bar, one must perform certain contract duties before any claim against the United States can arise. The section was passed for the protection of the United States and not for the protection of the plaintiff (*Price* v. *Forrest,* 173 U. S. 410), and the United States may recognize such a transfer so that payment to the transferee will protect it against any subsequent claim of the original party. (*Bailey* v. *United States,* 109 U. S. 432.)

In the case at bar  we have not a naked claim assigned but an entire contract; it was a case in which it was necessary that 220,000 pounds of material be delivered to the United States government before any claim could arise. Consequently, it is a case entirely beyond the scope and intent of section 3477 of the United States Revised Statutes. Such a case of assignment of contracts is dealt with in section 3737 of the United States Revised Statutes. That section reads as follows: " No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States."

But even this section affects only the right-duty relation between the United States and the assignee, and has no effect on the legal relationship arising between the assignor and assignee.

*Burck* v. *Taylor* ([1894] 152 U. S. 634, 648) shows clearly that such is the effect of that statute. The following lines occur in that case: " The express declaration that so far as the United States are concerned a transfer shall make an annulment of the contract, carries by clear implication, the declaration that it shall have no such effect as between the contractor and his transferee. In other words, as to them the transfer is like any other transfer of property, and controlled by the same rules. Its invalidity is only so far as

22

Surrogate's Court, Saratoga County, January, 1925.        [Vol. 124

the government is concerned and it alone can raise any question of the violation of the statute."

This means then that the United States statutes in no way invalidate the assignment made by the plaintiff to the defendant so far as concerns the legal relationships created between themselves.

As the contract was assigned to the defendant, the defendant came under a duty to the plaintiff to carry out the terms of the contract. While it is true there is no evidence that the defendant expressly promised the plaintiff that he would carry out the contract, such is not necessary to hold the defendant liable. It has been repeatedly held that where one assigns a contract to another, for valuable consideration, the assignee comes under a duty to the assignor to carry out the terms of the contract which has been assigned to him. Consequently, such a promise on the defendant's part the law will imply in this case. Furthermore, the defendant is under a duty to repay the plaintiff, because the plaintiff as assignor became only secondarily liable while the defendant was in effect primarily liable, and consequently the plaintiff, in paying the debt when the principal debtor did not, was subrogated to the rights which the United States could have had against the defendant by exercising its privilege to ratify the assignment, and so plaintiff can hold defendant for the payment of the sum of $684.

Judgment then must be entered in favor of the plaintiff in the sum of $684.