No. 80-269

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

LEASEAMERICA CORPORATION OF WISCONSIN,

Plaintiffs and Respondents,

vs.

STATE OF MONTANA,

Defendant and Appellant.

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis and Clark.
Honorable Gordon Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, argued, Helena,
Montana
Richard Larson argued, Assistant Attorney General,
Helena, Montana

For Respondents:

Jardine, Stephenson, Blewett and Weaver, Great Falls,
Montana
Jack Lewis argued, Great Falls, Montana

Submitted: February 17, 1981

Decided: MAR 16 1981

Filed: MAR 16 1981

_Thomas J. Kearney_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

The State appeals a Lewis & Clark County District Court decision awarding plaintiff, Leaseamerica, a summary judgment. Leaseamerica cross-appeals for prejudgment and post-judgment interest.

In 1967 the Legislature authorized the state attorney general to establish a law enforcement teletypewriter communications system (LETS) and to acquire the necessary equipment by lease, purchase or other means. In March 1973, then Attorney General Robert Woodahl entered into a lease arrangement with Action Communications Systems, Leaseamerica's assignor, whereby the State agreed to lease the necessary equipment for a period of six years, paying $2,388 in 72 monthly payments. Immediately thereafter, Action assigned the lease to Leaseamerica, together with all rights to the lease payments. The State made the lease payments from May 1973 to May 1977, when Attorney General Mike Greely notified Leaseamerica that it was unilaterally terminating the lease. Notice of Action's sale, assignment, and transfer of all interest in the lease to Leaseamerica was not filed with the state auditor until shortly before this lawsuit was instituted. At the end of the 72-month period, Leaseamerica took possession of the equipment. On February 9, 1978, Leaseamerica commenced an action seeking: (1) specific performance of the State's obligation to pay under the lease; (2) attorney fees pursuant to an indemnity provision in the lease; (3) prejudgment and post-judgment interest.

The District Court entered judgment in favor of Leaseamerica for the lease payments and attorney fees but denied Leaseamerica's claim for interest.

The following issues are presented in this appeal:

1. Is a six-year lease of a law enforcement communications system entered into by the attorney general of the State of Montana in March 1973 unenforceable as against the State under the provisions of section 82-1918, R.C.M. 1947, which then limited the term of those state contracts covered by the statute to three years?

2. Is an assignee of the lessor of a law enforcement communications system prohibited by section 17-8-211(1), MCA, from filing an action against the State for specific performance of the lease agreement where notice of the assignment of the lessor's interest to the assignee was not filed with the state auditor until just prior to the filing of the action?

3. Is the State obligated to pay attorney fees where a lease provided for indemnification of lessor, and the lessor's successors, for failure of the State to perform or comply with any of the terms of the agreement?

4. After adoption of the 1972 Montana Constitution, is the State obligated to pay prejudgment and post-judgment interest on lease payments from the due date of each payment?

The lease here in dispute was executed in March of 1973. At that time, Ch. 19, of Title 82, entitled Purchasing Department and Agent, section 82-1918, R.C.M. 1947, provided:

"Contracts limited to three years. No contracts shall be made for a longer period than three (3) years and such contract shall provide for the delivery of such articles at such times and in such quantities as the purchasing agent may determine." (Emphasis supplied.)

The subject lease was executed by the attorney general pursuant to power derived from sections 44-2-301, MCA, and 44-2-302, MCA. The former authorized establishment of a law

enforcement telecommunications system while the latter authorized the attorney general to lease equipment necessary for accomplishing the objective.

In Holtz v. Babcock (1963), 143 Mont. 341, 389 P.2d 869, this Court held that lease--purchase contracts executed by the state purchasing agent were subject to competitive bidding requirements of the state purchasing statutes. Here the issues are whether those same statutes and in particular, section 82-1918, R.C.M. 1947, limiting contracts to three years, applied (1) to leases which have no option to purchase /and (2) to leases executed by the attorney general. The questions have not previously been decided by this Court.

Applicable rules of construction are: (1) Both the context of a statute and the plain meaning of its terms can be considered in determining legislative intent. In Matter of Adoption of Smigaj (1977), 171 Mont. 537, 540, 560 P.2d 141. (2) The title to an act may be looked to in construing the act. In re Coleman's Estate (1957), 132 Mont. 339, 343, 317 P.2d 880. (3) In determining legislative intent a court can resort to history of the statute. Dept. of Rev. v. Puget Sound Power & Light (1978), ____Mont.____, 587 P.2d 1282, 35 St.Rep. 1368.

When passed in 1923, section 82-1918, R.C.M. 1947, limited contracts to one year. This statute was in effect when, in 1967, statutory authorization empowered the attorney general to lease telecommunications equipment. The one-year limitation was changed to three years by amendment in 1971.

Section 82-1918, R.C.M. 1947, as it existed when the present lease was executed, was silent regarding leases. When the Legislature granted leasing power to the attorney

-4-

general, a limitation of years was not provided either by reference to the chapter covering purchasing agent or limited in Ch. 2, Title 44, which established the system. The Legislature amended section 82-1918, in 1971, four years after the attorney general was authorized to lease telecommunications equipment; there was no legislative attempt to apply the provisions of section 82-1918 to Title 44.

Prior to the 1971 legislative session, the attorney general had, on July 14, 1969, issued a formal opinion stating the prohibitions of section 82-1918, R.C.M. 1947, did not apply to state leases. The lease issue was being discussed and was a subject of an attorney general's opinion when section 82-1918 was amended in 1971; yet the prohibitions were not applied to leases.

We are persuaded by the following factors: (1) Section 82-1918, R.C.M. 1947, refers specifically to the purchasing agent, but it does not refer to any other agents of state government. (2) Section 82-1918 is a section under Ch. 19, entitled Purchasing Department and Agent. (3) Title 44, giving the attorney general power to lease telecommunications equipment, does not limit that power as to time. (4) Section 82-1918 was amended in 1971, four years after the attorney general was authorized to lease without limitation and two years after the attorney general gave an opinion that section 82-1918 did not apply to leases; yet no attempt was made by the Legislature to apply section 82-1918 to the attorney general's leasing power.

We find section 82-1918, R.C.M. 1947, not applicable to leases executed by the attorney general pursuant to section 44-2-302, MCA.

The State contends that failure of Leaseamerica or its assignor to record the lease assignment with the state auditor prior to February of 1978 forecloses this action which was not instituted until February 9, 1978.

Section 17-8-211(1), MCA, provides:

"All transfers and assignments made of any claim against the state, or any part thereof or interest thereon, except as hereinafter provided, shall be absolutely null and void and unenforceable against the state unless the assignee thereof files written notice of the assignment on such forms as may be required by the state auditor, together with a true copy of the instrument of assignment." (Emphasis supplied.)

Paragraph No. 13 of the subject lease stated: "Lessor may, without lessee's consent, assign this lease or any interest therein." The State knew of the assignment and made payments to the assignee Leaseamerica for a period of four years.

The State's position must fail for at least three reasons. First, the statute applies to assignments of "claim" rather than assignments of contract. Anti-assignment statutes have historically been limited to liquidated debts. Explosive Chemical Co. v. William S. Gray & Co. (1925), 207 N.Y.Supp. 638. Secondly, the statute does not require filing within a time certain and a filing was eventually made with the auditor prior to instituting suit on February 9, 1978. Finally, the State can claim no prejudice as it had actual notice of the assignment and made lease payments to Leaseamerica for four years.

Leaseamerica claims attorney fees pursuant to a contractual provision with the State. The State was to indemnify the lessor for "legal expenses" incurred as the result of any default upon the part of lessee, State of Montana.

Section 18-1-404, MCA, provides:

"Liability of state--limitation--costs. (1) The State of Montana shall be liable in respect to any contract entered into in the same manner and to the same extent as a private individual under like circumstances, except the State of Montana shall not be liable for interest prior to or after judgment or for punitive damages.

"(2)Costs may be allowed as provided in 25-10-711. In all other cases, costs shall be allowed in all courts to the successful claimant to the same extent as if the state of Montana were a private litigant, except that such costs shall not include attorney's fees."

Section 25-10-711, MCA, referred to in the above-quoted statute, provides for an award of reasonable attorney fees in the event that the State's litigation is deemed to be frivolous or is pursued in bad faith. Neither of those factors exist here.

A reading of these statutes compels the conclusion that liability for attorney fees can arise from contract but cannot be awarded as "costs" absent bad faith on the State's part.

The State has relied on Tomten v. Thomas (1951), 125 Mont. 159, 232 P.2d 723, wherein this Court held that the word "expense" was synonymous with "costs". Therefore, argues the State, "legal expense" as denoted in the lease is a cost and cannot be awarded against the State unless the State litigates in bad faith.

Tomten v. Thomas, supra, was overruled by Callant v. Federal Land Bank of Spokane (1979), ____Mont.____, 593 P.2d 1036, 36 St.Rep. 824. Legal "expenses" are not synonymous with "costs" but rather, when provided contractually, are treated as a special damage recoverable in addition to the principal sum. Bovee v. Helland (1916), 52 Mont. 151, 156 P. 416.

We find the State liable for attorney fees under its lease indemnity provision.

Leaseamerica asserts that it is entitled to interest on its judgment despite the provisions of section 18-1-404(1), MCA, quoted above, which prohibits an award of interest against the State.

Leaseamerica argues that section 18-1-404(1), MCA, is inconsistent with Article 2, Section 18 of the 1972 State Constitution which provides that a governmental entity shall have "no immunity from suit or injury to a person or property." The District Court found that this language was intended to apply to tort but not contract actions.

We have reviewed the constitutional debate prior to the adoption of this particular section. The original draft of Section 18, Non-immunity from Suit, provided: "The State and its subdivision shall have no special immunity from suit." Delegate Habedank in the Constitutional Convention moved to support an amendment which would add, following the words suit, the language "for injury to a person or property." Delegate Habedank, the sponsor of the amendment, revealed its intent in the debate:

> "Limited as it is, for injury to a person or property, the Legislature is still free to make it more open if they desire to do so in the future. But we at least have assured the people of the State of Montana that they can sue for negligent injury." Con.Con. Transcript TR. P. 5430, lines 10-14.

We agree with the District Court that the intent of the constitutional delegates was to limit nonimmunity to torts committed by the State.

We find the statutory prohibition against interest in section 18-1-404(1), MCA, to be constitutional. The State of Montana is not liable for prejudgment or post-judgment interest.

The judgment of the District Court is affirmed.

_____
Justice

-8-

We concur:

_____
Jesse B Daly

_____
John C. Sheehy

_____
_____
Justices

Mr. Justice Daniel J. Shea will file a separate opinion later.

Mr. Chief Justice Frank I. Haswell dissenting:

I respectfully dissent. The result reached by the majority may be an equitable accommodation, but in my view it is not the law.

At the time the six-year lease of the equipment was entered into between Leaseamerica and the State of Montana, our statute provided:

> "Contracts limited to three (3) years. No contracts shall be made for a period longer than three (3) years, and such contract shall provide for the delivery of such articles at such times and in such quantities as the purchasing agent may determine." Laws of Montana (1971), Ch. 301, § 2.

A lease is a contract. Here it was made for a period of six years. Such a contract was prohibited by the clear, unambiguous language of the statute.

In construing a statute, the intention of the Legislature is controlling. Section 1-2-102, MCA; Haker v. Southwestern Railway Co. (1978), 176 Mont. 364, 369, 578 P.2d 724, 727, and cases cited therein; Dunphy v. Anaconda Co. (1968), 151 Mont. 76, 80, 438 P.2d 660, 662, and cases cited therein. The intention of the Legislature must first be determined from the plain meaning of the words used in the statute, and if the meaning of the statute can be so determined, courts may not go further and apply any other means of interpretation. Haker, supra, and cases cited therein; Dunphy, supra, and cases cited therein. Thus where the language of the statute is plain, unambiguous, direct and certain, the statute speaks for itself and there is nothing left for the court to construe. Dunphy, supra, and cases cited therein. In such case, the function of this Court is simply to ascertain what in terms or in substance is contained in the statute and not to insert what has been omitted. Section 1-2-101, MCA; State ex rel. Zander v. District Court (1979), ____Mont.____ , 591 P.2d 656, 662, 36 St. Rep. 489, 496; Dunphy, supra, and cases cited therein. In sum, it is simply the duty of the Court to construe the law as it finds it. Dunphy, supra, and cases cited therein.

- 10 -

Here the District Court created an ambiguity in the act by referring to its title and then proceeding to apply a variety of extrinsic rules of construction in determining that the contract was not void. This it cannot do. The title of a legislative act cannot be used to create an ambiguity in the text of the act so as to authorize recourse to extrinsic rules of construction. State ex rel. Palagi v. Regan (1942), 113 Mont. 343, 351-352, 126 P.2d 818, 824; State ex rel. Jones v. Erikson (1926), 75 Mont. 429, 453, 244 P. 287, 296.

The District Court's recourse to extrinsic rules of construction is bottomed on its view that otherwise the scope of the statute would be "stupendous" and would outlaw all contracts in excess of three years throughout the state, which is not rational. This rationality approach is simply an extrinsic aid to construction available only where the statute is ambiguous. It cannot be used to defeat the plain and unambiguous language of the statute. Our function here is not to "improve" the statute by resort to extrinsic rules of statutory construction, but simply to declare what its language plainly states.

The majority appears to have taken the same course as the District Court. They, too, have gone beyond the plain meaning of the words in the statute. In attempting to ascertain the intention of the legislature, the majority points to the fact that the statute as it existed at the time the state lease was executed was silent with regard to leases. Yet the statute refers to "contracts," and there is no dispute that a lease is a contract. The statutory words clearly tell us that a lease is included in the statutory prohibition.

Next the majority notes that when the legislature gave the Attorney General the power to establish the LETS system by lease or purchase of equipment, the legislature did not provide a time limitation for those contracts, nor did it explicitly make the time limitations of section 82-1918 applicable to the leases or purchases. In my view, it is clear why the legislature did not do this. Section 82-1918 provides a three-year limitation on

state contracts; an additional statutory provision was unnecessary.

In resorting to these surmises about legislative intent, the majority is ignoring the rules of statutory construction as set out in Department of Revenue v. Puget Sound Power & Light Co., supra. There we said that the courts should first attempt to determine statutory meaning from the plain words of the statute. Following that inquiry, the court can resort to the legislative history. Dept. of Revenue, supra, ____Mont. at____, 587 P.2d 1287, 35 St.Rep. at 1373. In my view, there is no need to resort to legislative history. The statute is clear on its face.

I would declare the contract prohibited by the three-year limitation and remand the case to the District Court for reformation on a three-year basis.

_____
Chief Justice


Mr. Justice John Conway Harrison concurring:

I heartily concur in the above dissent.

_____
Justice