No. 85-610

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

DUANE ALEX POPP, JR.,

        Plaintiff and Respondent,

  -vs-

JOHN GOUNTANIS AND GEORGE FRANK,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Charles Luedke, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gerald J. Neely, Billings, Montana

    For Respondent:

        Moses Law Firm; Stephen Moses, Billings, Montana

---

Submitted on Briefs: March 28, 1986

Decided: May 9, 1986

Filed: MAY 9 - 1986

_Ethel M. Harrison_
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Defendant George Frank appeals the judgment of the Thirteenth District Court, County of Yellowstone, awarding the sum of $50,082.20 plus interest to plaintiff Duane Popp in a breach of contract action. We affirm.

In April, 1982, an oral lease was entered into by the parties, whereby Popp was to plant and harvest crops upon land owned by George Frank and John Gountanis. Under the terms of the agreement, two-thirds of the crops would go to Popp, one-third to Frank and Gountanis; Popp was to cover all expenses, with the exception of fertilizer for which he would contribute two-thirds of the cost.

In May of 1982, Popp planted 800 acres of barley on the land, which was harvested in August of 1982, with Frank and Gountanis' share being delivered to a Billings elevator. In the fall of 1982, Popp planted 766 acres of winter wheat. This crop was included as security for a loan Popp obtained from the Yellowstone Bank of Laurel to cover his operating expenses.

In early 1983, the federal government established the payment in kind program (PIK). The intent of PIK was to reduce the nation's surplus of certain crops by awarding benefits to farmers for not producing such crops. Popp attempted to enroll the land under the lease from Frank and Gountanis in the PIK program, but was informed by the Agricultural Stabilization and Conservation Service (ASCS) that he must have a written lease to be eligible. On March 7, 1983, Frank and Gountanis filed an application with the ASCS, and the land being farmed by Popp was approved for PIK benefits.

Sometime in early March, 1983, Popp became aware that Frank and Gountanis had enrolled the land in the PIK program. About the same time, Popp's doctor informed him that he had a heart condition and recommended that Popp quit farming. Shortly thereafter, Popp met with Gountanis to discuss distribution of the PIK benefits and to inform Gountanis that he would be quitting farming. No agreement was reached as to the PIK benefits, and Gountanis understood Popp to mean he was immediately getting out of farming, which was not Popp's intent. Following the meeting, Popp contacted his lawyer and the parties quit communicating.

On April 25, 1983, ASCS sent notice to the parties that 1608 acres had been approved for PIK benefits, such amount having been based upon the acreage farmed during 1980 and 1981 by the previous tenant. One of the requirements under the program was that the crop growing on the approved land be destroyed by July 15, 1983. Popp planned to hay the crop, which was permissible under the regulations; Gountanis made arrangements to have sheep graze the crop, under the belief that Popp had quit farming and abandoned the lease.

In early July, prior to the time Popp planned on haying the wheat, he was informed that about 3500 head of sheep were in grazing on the wheat. Without Popp's knowledge, Gountanis had arranged for the sheep to graze the crop, and subsequently a contractor was brought in to further destroy the crop and disc the entire acreage at a cost of $11,579.46, which was paid by Frank and Gountanis.

Although ASCS was aware of the dispute between the parties, Frank and Gountanis received the entirety of the PIK benefits, which amounted to $82,465.07. Popp filed suit, alleging Frank and Gountanis breached the lease agreement, and that he was entitled to two-thirds of the PIK benefits,

3

two-thirds of the amount received for permitting the sheep to graze, and his costs in planting the crop.

Following a bench trial, the District Court entered judgment in favor of Popp. The findings of fact and conclusions of law reveal that Popp was awarded $50,082.20, which included two-thirds of the PIK benefits plus two-thirds of the grazing fee less the plowing expense incurred by Frank and Gountanis. Popp was also awarded $8,180.76 in interest expenses which had accrued on his unpaid loan since the date the PIK benefits were awarded to Frank and Gountanis.

Defendant Frank appeals the District Court judgment, and raises the following issues:

1. Whether as a matter of law, the failure of Popp to appeal the decision of the government not to include him in PIK payments can be collaterally attacked?

2. Whether as a matter of law, a lease which requires a percentage of crops to go to a tenant, but which does not contemplate later federal benefits, requires the tenant to share in those federal benefits when the fruits of his labor do not create any entitlements under the federal program?

3. Whether as a matter of law, accrued interest on obligations not necessarily related to the farming of the Frank/Gountanis property are an item of damages upon Frank/Gountanis's failure to pay over PIK proceeds?

The first issue is whether Popp's failure to appeal the decision of the ASCS that he was not eligible for PIK benefits precluded him from collaterally attacking that determination in state district court. We support the District Court finding that the PIK program could not be used to destroy Popp's contract rights.

There is no dispute that Popp was entitled to some of the PIK benefits. The minutes of the ASCS County Committee

4

meeting March 16, 1983, reflect that fact, as does the testimony of committee director Harold Morrison, who testified that ASCS was uncertain of Popp's share and determined that settlement between the parties was not ASCS's affair. All of the PIK benefits were therefore awarded to Frank and Gountanis. Popp's subsequent filing of a lawsuit was not a collateral attack on the ASCS determination. Rather the amended complaint shows it was a breach of contract action against Frank and Gountanis.

The next issue raised by Frank is whether the oral lease granting two-thirds of the crops to Popp also required that Popp receive two-thirds of the PIK benefits. Both parties agree that awards made under federal programs, such as PIK, were not contemplated at the time the lease was executed. Frank's contention is that the amount of PIK benefits was determined by the acreage cultivated by the previous tenant, 1608 acres, and Popp received a windfall because he planted a crop on only 766 acres.

The evidence in the record reveals that Frank and Gountanis were landlords and Popp was their tenant. Popp used his own equipment, paid his own expenses, furnished the growing wheat as collateral for a loan, and had possession of the land. As a tenant, Popp had an estate in the land and the right of possession to the entire crop until delivery was made to the landlords. Davis v. Burton (1952), 126 Mont. 137, 246 P.2d 236; 21 Am.Jur.2d Crops § 35.

That Popp chose to plant wheat on only 766 acres does not affect the fact he had an interest in the remainder of the land. PIK was designed to pay farmers for not producing a crop. In this case, PIK benefits were awarded to Frank and Gountanis as record owners of the 1608 acres which did not produce a crop. However, Popp had an estate in the land for

5

the duration of his tenancy, and the award to Frank and Gountanis was in derogation of Popp's interest. We find no error in the District Court determination that Popp was entitled to two-thirds of the PIK benefits under the lease terms.

The District Court awarded Popp $8,180.76 to cover the amount of accrued interest on his outstanding bank loan dating from the failure of Frank and Gountanis to pay Popp his two-thirds share of the PIK benefits. Frank asserts this was error because Popp maintained only one account which covered living expenses as well as other farming operations. Therefore, the loan balance was not solely attributable to the farming of the Frank and Gountanis property. We disagree.

The District Court found that Popp's inability to satisfy the loan balance of $32,694.92 was directly related to Frank and Gountanis' refusal to pay Popp his two-thirds share of the PIK benefits. Frank and Gountanis received payment for their PIK bushels in December, 1983, at which time Popp's share became certain. Had Popp received his proper share, he would have been able to pay the loan entirely and avoid further interest charges. The accrued interest on Popp's loan balance from that date was clearly part of his damages and we uphold the District Court award.

The judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

L.C. Gulbrandson,

William E. Hunt Sr.

Justices

7