No. 90-519

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

MARTEL CONSTRUCTION, INC.,

      Plaintiff and Respondent,

-vs-

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE DEPARTMENT OF HIGHWAYS
OF THE STATE OF MONTANA,

      Defendant and Appellant.

FILED

AUG 30 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Hon. Marc Racicot, Attorney General, Helena,
          Montana;  W. D. Hutchinson, Assistant Attorney
          General, Helena, Montana.

      For Respondent:

          Richard J. Andriolo, Attorney at Law; Bozeman,
          Montana;  Patrick A. Sullivan;  Winston & Cashett,
          Spokane, Washington.

Submitted on Briefs:  April 12, 1991

Decided:  August 30, 1991

Filed:

_____
       Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellant, State of Montana, appeals from a judgment entered on a jury verdict rendered in the District Court of the First Judicial District, Lewis and Clark County, awarding the respondent, Martel Construction, Inc., $549,000 in damages for breach of contract. We affirm in part, reverse in part and remand for a new trial.

The sole issue for review is whether the District Court erred in ruling that Martel could recover, as an element of damages against the State, the interest expense paid on funds it was allegedly required to borrow in order to finance extra work caused by the State.

In June, 1984, the appellant, State of Montana, acting by and through the Montana Department of Highways, solicited bids for the reconstruction of the existing Burlington Northern Railroad overpass at Havre, Montana. The project called for the complete refurbishment of the existing railroad overpass and the addition of two more traffic lanes. The end result was to be a four-lane overpass consisting of a new bridge built immediately adjacent and attached to the refurbished old bridge.

The Department of Highways did not make a new survey of the existing bridge prior to putting the project out for bid. Instead, it used the plans prepared for construction in 1936 which the Department believed actually represented the elevation and dimensions of the bridge in 1984. The 1936 data was transposed

2

onto the contract drawings sent out to contractors for bidding purposes. Martel, relying upon the accuracy of the contract drawings, submitted the lowest bid and was awarded the contract on July 27, 1984.

Martel began construction on September 12, 1984. When Martel started to construct the new bridge to attach to the old bridge, it discovered that the elevation of the old bridge and certain other dimensions were not as represented on the contract drawings. Martel was required to perform extra work not contemplated under the contract in order to make the new bridge fit. Martel completed the contract on August 1, 1986.

On January 16, 1986, prior to completing the contract, Martel submitted a series of claims associated with extra work in performing the contract to the Department of Highways for administrative resolution. Some of the claims were allowed; most were denied by the Department on April 17, 1986. Martel appealed the denial of the claims to the Department's Board of Contract Appeals on May 9, 1986. The Board affirmed the original denial on December 31, 1986.

On March 26, 1987, Martel filed suit in the District Court against the State of Montana seeking damages for breach of contract. Martel sought to recover its actual construction costs for the extra work it had performed under the contract as well as the interest it had paid on funds allegedly borrowed to finance the extra work. Martel denominated the interest it had paid on the

3

borrowed funds as "moratory interest."

Prior to trial, the District Court requested briefs from counsel on the issue of whether "moratory interest" could be recovered as an item of damages in a contract action against the State. The District Court ruled, as a matter of law, that the "moratory interest" claimed by Martel is part of the actual damages claimed to have been incurred by Martel, rather than prejudgment interest; thus, it could be recovered as an item of special or general damages for breach of contract.

A jury trial was held May 28 through June 8, 1990. At trial, Martel presented testimony and exhibit evidence that it incurred an actual expense of $170,841.46 through the payment of interest on funds borrowed during the period 1985-1990 in order to finance the construction project and that the average interest rate during this time was 10 3/4%. During closing argument Martel's counsel, stated:

> You will also have with you exhibit number 126 which is the moratory interest calculations. . . . That is the actual money that Bill Martel paid out of his pocket to a bank to finance this job. And whatever money you determine that he is entitled to you should add a factor of interest and I would suggest that once you have come up with a lump sum for delays and the . . . [extra construction] costs, that you can apply the 10 point three quarter percent interest.

Later, in discussing the verdict form, counsel stated:

> I have not filled in any amounts for moratory interest because I trust that on any amounts that you find that Martel is entitled to you can apply the 10 point three quarter interest factor and come up with your own amount.

In addition, Jury Instruction No. 23 instructed the jury that:

4

Martel Construction is seeking "moratory interest" damages from the State of Montana. Moratory interest is interest allowed in actions for breach of contract as damages for unlawful detention of money found due.

As a jury, you may award moratory interest damages to Martel Construction if you find that the State of Montana caused Martel Construction to borrow money to pay for extra work or delays ordered by or caused by the State of Montana.

At the conclusion of the trial the jury found the State had breached the contract between the parties and awarded Martel damages in the amount of $384,000 for extra work and $165,000 for "moratory interest," for a total award of $549,000. The State appeals the portion of the judgment relating to the "moratory interest."

Contract actions against the State of Montana are governed by Title 18, Chapter 1, part 4, MCA. The extent of the State's liability in contract actions is set out in § 18-1-404, MCA, which provides, in pertinent part:

> **Liability of state--limitations--costs.** (1) The state of Montana shall be liable in respect to any contract entered into in the same manner and to the same extent as a private individual under like circumstances, except the state of Montana shall not be liable for interest prior to or after judgment or for punitive damages.

As quoted above, except for the prohibition against interest prior to or after judgment and punitive damages, § 18-1-404(1), MCA, renders the State liable for damages in contract cases to the same extent as a similarly situated private litigant. The general measure of damages for breach of contract, including a breach of contract by the State, is set out in § 27-1-311, MCA.

5

**Breach of contract.** For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract.

In Ehly v. Cady (1984), 212 Mont. 82, 97, 687 P.2d 687, 695, we made the following observation regarding the types of damages recoverable for breach of contract:

> An examination of Section 27-1-311, MCA, . . . will reveal two kinds of damages recoverable from breach of contract. Damages "for all the detriment caused thereby" include all damages which in the ordinary and natural course of things are proximately caused by the breach itself. These damages are the natural result of the breach. Damages under the statute may also be recovered "which in the ordinary course of things would be likely to result therefrom." Our court, and courts everywhere, recognize this provision as permitting recovery for consequential damages within the contemplation of the parties when they entered into the contract, and such as might naturally be expected to result from its violation. Myers v. Bender (1913), 46 Mont. 497, 508, 129 P. 330, 333. These damages are the contemplated result of the breach.

We note, in addition, that all damages for breach of contract, whether natural or contemplated, require proof of causation, certainty and foreseeability. Ehly, 212 Mont. at 97, 687 P.2d at 695. Furthermore, damages must be reasonable. Section 27-1-302, MCA.

We have held previously that interest paid by a plaintiff to a third party as a result of a defendant's breach of contract is a proper element of damages. In Popp v. Gountanis (1986), 221 Mont. 267, 718 P.2d 340, Popp leased land from the defendant and

planted and harvested crops on the land for several years. The defendant enrolled the land in a federal "payment in kind" (PIK) program and, without Popp's knowledge or permission, received the entire PIK payment. Popp sued for breach of the lease seeking, among other damages, the increased interest incurred as a result of his inability to pay off the balance of his loan covering his farming operations, which he intended to pay with the PIK payments. The District Court awarded such damages and this Court affirmed, stating:

> The District Court found that Popp's inability to satisfy the loan balance of $32,694.92 was directly related to Frank and Gountanis' refusal to pay Popp his two-thirds share of the PIK benefits. Frank and Gountanis received payment for their PIK bushels in December, 1983, at which time Popp's share became certain. Had Popp received his proper share, he would have been able to pay the loan entirely and avoid further interest charges. <u>The accrued interest on Popp's loan balance from that date was clearly part of his damages</u> and we uphold the District Court award.

<u>Popp</u>, 221 Mont. at 271, 718 P.2d at 343 (emphasis added). See also, Bolz v. Meyers (1982), 200 Mont. 286, 651 P.2d 606; Lee v. Andrews (1983), 204 Mont. 527, 667 P.2d 919. It is clear, therefore, that in a suit between private litigants or, indeed, against the State absent the exception in § 18-1-404, MCA, increased interest payments by a plaintiff which result from a defendant's breach of contract, are a recoverable item of damages.

The plain language of § 18-1-404(1), MCA, makes it clear, however, that the intent of the legislature was to prohibit State liability for prejudgment or post-judgment interest in contract

7

cases where a similarly situated private litigant would be liable for such interest. This Court upheld the constitutionality of the statutory prohibition against State liability for prejudgment and post-judgment interest in Leaseamerica Corp. v. State (1981), 191 Mont. 462, 468-69, 625 P.2d 68, 71.

This Court has referred to interest as "damage for delay in payment of the principal obligation." Jacques v. Montana Nat'l Guard (1982), 199 Mont. 493, 507, 649 P.2d 1319, 1327. The statutory definition of interest is "the compensation allowed by law or fixed by the parties for the use or forbearance or detention of money." Section 31-1-104, MCA. Most cases dealing with the recoverability of interest involve claims for interest allegedly due as compensation for the detention of money. In other words, the interest sought is money which the injured party hypothetically could have earned, through investment or otherwise, if the injury-causing party timely had paid compensation for the harm. This usual approach to interest is reflected in our discussion of the general prejudgment interest statute, § 27-1-211, MCA, in Price Building Service, Inc. v. Holms (1985), 214 Mont. 456, 468-69, 693 P.2d 553, 559-60, in which we stated:

> The prejudgment interest statute, in existence since 1895, merely sets forth a broad area in which the legislature has determined prejudgment interest should be allowed as a matter of right . . . . It is merely part of the law of damages that has, as its objective, that of making the injured person whole.
>
> . . .

Determining whether a cause of action fits within the

framework of the statute, particularly the question of whether the claim is determined or can be determined by calculation, is not always an easy one. _However, the overriding purpose of the statute can be best preserved if it is remembered that its purpose is to fully compensate the injured party for the loss of use of his money during the period in which a valid claim was not paid._ [Emphasis added.]

Bearing in mind this usual approach to interest, the prohibition against the State's liability for interest contained in § 18-1-404(1), MCA, refers to delay damages or compensation for the loss of use or detention of money. Therefore, whether referred to as prejudgment interest, moratory interest or otherwise, amounts claimed against the State for the loss of use or detention of money are "interest" within the meaning of § 18-1-404(1), MCA, and thus, not recoverable under the statute.

Examining that portion of Martel's overall claim against the State which is referred to as "moratory interest," it appears from the record that some part of this claim against the State may constitute actual damages, that is, out-of-pocket expenses incurred as a result of the State's breach of contract. Martel alleged that as a result of errors in the contract drawings prepared by the State and justifiably relied upon by Martel, it had to perform extra work to complete the project. Martel further alleged that in order to finance this extra work it was required to borrow money from its bank, for which the bank charged interest. Interest paid by Martel to its bank on funds necessarily borrowed to finance the extra work is an item of actual damages recoverable under § 27-1-311, MCA, to the extent that it is ascertainable in both nature

9

and origin and can be causally and foreseeably related to the State's breach of contract. Although such payments made by Martel to its bank were in the form of interest, they are part of its actual damages, subject to the appropriate proof, and not "interest" chargeable against the State as prohibited by § 18-1-404(1), MCA.

This Court has recently affirmed an award of "moratory interest" between private litigants in Billings Clinic v. Peat Marwick Main & Co. (Mont. 1990), 797 P.2d 899, 47 St.Rep. 1464. In that case, due to the defendants' breach of an obligation owed to the plaintiff, the plaintiff incurred an increased interest expense of $834,533. It was conceded that this amount, the increase in interest actually paid by the plaintiff as a result of the defendants' breach, was an item of actual damages which could be recovered. However, the plaintiff also sought, and was awarded, an additional $142,076 in "moratory interest" as compensation for the loss of use of the money it actually spent in increased interest expense. In affirming the award of "moratory interest," this Court stated:

> When viewed from the prospect of the loss of use of the increased interest expense which the Clinic had to pay, the amount claimed as moratory interest does not exceed the limitation of damages for the breach of an obligation set forth in § 27-1-303, MCA, that no person can recover a greater amount of damages for the breach of an obligation than he or she could have gained by the full performance thereof on both sides. Again, the increased interest already incurred at the time of trial appears to be reasonably certain, and is capable of reasonable calculation. Accordingly, we find no error on this item.

10

Billings Clinic, 797 P.2d at 915, 47 St.Rep. at 1482. Thus, in light of Billings Clinic, "moratory interest" is not actual expense incurred, but rather is the additional compensation allowed for the loss of use of money. It necessarily follows that what this Court accepted as "moratory interest" in Billings Clinic, if claimed in a contract action against the State, would not be recoverable under § 18-1-404(1), MCA, since it falls squarely within the statutory prohibition against State liability for interest. Billings Clinic further helps clarify, consistent with our holding in Popp, that the increased interest expense incurred as a result of a breach of contract is, where appropriately proved, an item of actual damages recoverable under § 27-1-311, MCA, and under § 18-1-404(1), MCA, in an action for breach of contract by the State.

We note that both the District Court's ruling on the "moratory interest" issue and the trial in this case predated our holding in Billings Clinic. Nonetheless, the pleadings, proof, argument and instruction in this case are not altogether consistent with Martel's assertion that it sought to recover as "moratory interest" its out-of-pocket expenses resulting from the State's breach. Martel's claim for "moratory interest" and the manner in which it was presented in the District Court appear to reflect an intermingling of both a recoverable actual damage component and a prohibited "interest" component.

In light of the above, to the extent that Martel utilizes the term "moratory interest" to represent compensation for the loss of

11

use or detention of money, the "moratory interest" is not recoverable against the State. To that extent, it is interest prior to judgment and prohibited by § 18-1-404(1), MCA, no matter what it is called. On the other hand, to the extent that what was claimed as "moratory interest" can be proved to be an item of actual damages resulting from the State's breach of contract, it is recoverable as such, but not as "moratory interest." Accordingly, we conclude that it is necessary to remand for a new trial on this item of damages consistent with this opinion.

Affirmed in part, reversed in part and remanded for a new trial.

Justice

We concur:

Chief Justice

Justices

12