DA 12-0543

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2013 MT 301

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Plaintiff, Appellee
      and Cross-Appellant,

   v.

FRANK FREYER, as Personal Representative of
the Estate of Heath Evans Freyer, and as
Conservator of the Estate of Alicia Freyer,
a Minor Child, and VAIL FREYER,

      Defendants, Appellants
      and Cross-Appellees.


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and For the County of Gallatin, Cause No. DV 07-754A
                Honorable Holly Brown, Presiding Judge


COUNSEL OF RECORD:

      For Appellants:

            Allan H. Baris; Moore, O'Connell and Refling, P.C.; Bozeman, Montana
            (for Frank Freyer)

            Daniel P. Buckley; Buckley Law Office, P.C.; Bozeman, Montana
            (for Vail Freyer)

      For Appellee:

            Dale R. Cockrell; Jinnifer Jeresek Mariman; Moore, Cockrell, Goicoechea
            & Axelberg P.C.; Kalispell, Montana (for State Farm)

            Robert F. James; Ugrin, Alexander, Zadick, & Higgins, P.C.;
            Great Falls, Montana (for State Farm)

For Amici:

Lawrence A. Anderson; Attorney at Law, P.C.; Great Falls, Montana
(for Amicus MTLA)

Submitted on Briefs:  July 24, 2013
Decided:  October 15, 2013

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     This is the second appeal in this case.  *See State Farm Mut. Aut. Ins. Co. v. Freyer* (*Freyer I*), 2010 MT 191, 357 Mont. 329, 239 P.3d 143.  Generally, Heath Freyer (Heath) and Vail Freyer (Vail), who were married and the parents of Alicia Freyer (Alicia), were all riding in their vehicle, which was insured by State Farm Mutual Automobile Insurance Company (State Farm).  Vail was driving when the vehicle was involved in a rollover accident that resulted in Heath's death.  In *Freyer I*, we held, based upon the language of the subject policy's "Limits of Liability" clause, that there was coverage for Alicia's claim for derivative damages stemming from the death of her father, Heath, under her own "Each Person" policy limit of $50,000, contrary to State Farm's position that all damages arising from Heath's death were covered only by the "Each Person" policy limit of $50,000 applicable to him.  *Freyer I*, ¶¶ 13-16.  After remand, State Farm paid the contested coverage amounts.  Appellants then brought claims against State Farm under several theories for the wrongful denial of coverage for Alicia's derivative claims.  The District Court granted summary judgment to State Farm on all of those theories, which Appellants challenge on appeal.  We reverse in part, affirm in part, and remand for further proceedings.  We address the following issues:

¶2     *1. Did the District Court err in concluding that State Farm had not breached the insurance contract when it failed to indemnify Vail for Alicia's derivative claims because it had a "reasonable basis in law" to challenge coverage of those claims?*

3

*¶3    2. Did the District Court err in granting summary judgment to State Farm on the common-law bad faith and breach of the covenant of good faith and fair dealing claims?*

*¶4    3. Did the District Court err in granting summary judgment to State Farm on the Unfair Trade Practices Act claims?*

*¶5    4. Did the District Court err in concluding State Farm waived its statute of limitations affirmative defenses?*

### FACTUAL AND PROCEDURAL BACKGROUND

¶6    In October 2003, Vail was driving a family vehicle in the Bozeman area, and Heath and three-month-old Alicia (collectively the Freyers), were passengers. Vail maneuvered the vehicle to pass a string of cars ahead of them, but when they were nearly even with the lead vehicle, driven by Michelle Manning (Manning), Manning executed a left-hand turn. The vehicles collided, sending the Freyers' vehicle off the road, where it overturned. Heath was ejected and suffered fatal injuries. Alicia, who was confined by her car seat, suffered minor injuries.

¶7    State Farm insured the Freyers' three vehicles against liability arising from Vail's driving. On the subject vehicle, State Farm's automobile liability policy provided coverage limits of $50,000 per person and $100,000 per accident, as well as underinsured motorist coverage of $50,000. Within days of the accident, State Farm offered to pay Heath's Estate the $50,000 per person coverage limit for Heath's injuries, but Vail's attorney asked State Farm to wait on payment until a probate proceeding had been

4

initiated. Heath's father, Frank Freyer (Frank), was appointed as personal representative of Heath's Estate and as conservator of Alicia's Estate.

¶8    On August 4, 2004, Frank requested by letter that State Farm pay the $50,000 it had previously offered to Heath's Estate. Frank also advised State Farm that he would be demanding $50,000 for settlement of Alicia's claims. The next day, State Farm sent Frank a check for $49,723.22, the balance of the $50,000 per person coverage limit for Heath's Estate's claim after deduction for payments made for Heath's funeral and medical care.

¶9    In September 2004, State Farm filed a declaratory judgment action in federal court in an unrelated case that sought a declaration that the "Limits of Liability" clause in its auto liability policy limited coverage to $50,000 for all claims arising from the bodily injury to one person. *See State Farm Mut. Aut. Ins. Co. v. Bowen* (*Bowen I*), No. 04-63-BU-RFC (D. Mont. Aug. 3, 2005). The Limits of Liability clause at issue in *Bowen I* was identical to the one in the policy insuring Vail. That clause provides, in pertinent part:

> The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability–Coverage A-Bodily Injury [-W-], Each Person, Each Accident." *Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to other persons, including emotional distress, sustained by such other persons who do not sustain bodily injury.*

(Emphasis added.)

¶10    On November 18, 2004, Frank demanded by letter that State Farm also pay $50,000 to satisfy Alicia's claims against Vail. Frank asserted that because Alicia

5

suffered "bodily injury," she was entitled to payment for all her damages, including her derivative claims arising from her father's death, out of her own $50,000 "Each Person" limit. Frank also asserted that Alicia had personally sustained over $50,000 in damages because she had suffered a "closed head injury."

¶11 Four days later, State Farm contacted its in-house counsel, Jo Ridgeway (Ridgeway), concerning Frank's interpretation of the Limits of Liability clause. Two days later, Ridgeway advised State Farm that the majority rule from courts that had interpreted the clause was that all "derivative claims"—damages arising from another person's injury or wrongful death—were subject to the $50,000 Each Person coverage limit. In other words, any derivative claim Alicia had pertaining to Heath's death was subject to the $50,000 Each Person coverage limit for his claims, which had already been paid to Heath's Estate. Based on this advice, State Farm informed Frank that it had already paid the available coverage limits for damages stemming from Heath's death. Further, State Farm advised that, based upon Alicia's medical records indicating that her head CT scan was normal, and her doctor's conclusion that she suffered only "minor bruising," it would settle her personal bodily injury claim against Vail for $5,000.

¶12 On January 27, 2005, Frank rejected the $5,000 offer and renewed his demand for $50,000. Frank advised that, if State Farm tendered that amount, he would provide a full release for all claims against Vail. State Farm rejected that offer, responding that it had changed neither its position regarding the interpretation of the policy nor its $5,000 valuation of damages for Alicia's own physical injuries.

6

¶13 On August 3, 2005, the U.S. District Court for Montana ruled in *Bowen I* that a derivative claim was subject to the same Each Person coverage limit as other claims for that person. *See Bowen I* at 9. That decision was ultimately affirmed by the Ninth Circuit. *State Farm Mut. Aut. Ins. Co. v. Bowen* (*Bowen II*), 247 Fed. Appx. 901, 902-03 (9th Cir. 2007).

¶14 On September 19, 2006, Frank, in his capacity as personal representative of Heath's Estate and conservator of Alicia's Estate, sued his daughter-in-law Vail for the damages sustained in the accident due to Vail's negligent driving. State Farm accepted defense of the lawsuit and retained counsel to defend Vail.

¶15 On October 30, 2007, State Farm filed an action seeking a declaration that it had complied with the payment obligations under the Limits of Liability clause. In their answers, Frank, on behalf of Heath's Estate and Alicia, and Vail asked the court to declare that the policy provided the additionally claimed coverage, and counterclaimed that State Farm had breached the insurance contract and the implied covenant of good faith and fair dealing, and violated Montana's Unfair Trade Practices Act (UTPA) by its mishandling of Alicia's and Heath's Estates' claims.

¶16 Two days later, Frank sent to State Farm a settlement letter demanding $2.6 million to settle all of the claims against Vail. According to Frank, $1.7 million of that settlement represented the "low range" of the economic loss to Heath's Estate because of his death, while approximately $1 million represented the loss of support, loss of companionship, loss of established course of life, and emotional distress damages

stemming from Alicia's loss of her father. Frank subtracted from the $2.7 million the $100,000 he had already been paid ($50,000 from State Farm and $50,000 from Manning's insurer). Although State Farm did not change its position regarding interpretation of the policy, it paid an additional $150,000 to Heath's Estate for three stacked $50,000 underinsured motorist coverages for the Freyers' three vehicles insured by State Farm on June 4, 2008.

¶17 On July 21, 2008, Frank and Vail executed a $2.6 million stipulated judgment that is the center of controversy in this case. The settlement agreement stated that $2.6 million was "a fair and reasonable" amount for settlement of Heath's Estate's claims *and* Alicia's claims. In return for Vail's confession of negligence and the assignment of all claims she may have against State Farm, Frank signed a covenant not to execute against Vail's personal assets.

¶18 On May 4, 2009, in the declaratory proceeding, the District Court ruled that State Farm had correctly interpreted the Limits of Liability clause of its policy. However, the Freyers appealed, and on August 27, 2010, this Court reversed, ruling that coverage for Alicia's derivative claims was not limited to Heath's Each Person limit. *See Freyer I*, ¶¶ 13-16. State Farm then paid another $50,000 to Alicia under the Each Person coverage limit applicable to her, and paid $20,000 in attorney fees to compensate Vail's attorney for his work in the declaratory judgment action. Further, because *Freyer I* had found there was coverage for Alicia's derivative claims, State Farm also paid her $150,000 in stacked underinsured motorist coverage, as it had for Heath's Estate. Thus,

8

State Farm paid Freyers a total of $400,000—$200,000 to Heath's Estate and $200,000 to Alicia.

¶19  In January 2011, Vail and Frank filed amended counterclaims in the proceeding. Vail alleged an additional violation of Montana's UTPA, and asked for a declaration that the $2.6 million stipulated judgment was valid and enforceable against State Farm. Frank also sought enforcement of the stipulated judgment against State Farm. State Farm denied and countered that the claims were barred by the statute of limitations.

¶20  All parties moved for summary judgment. The District Court granted State Farm's motion for summary judgment and denied Frank's and Vail's motions. The court concluded that it was reasonable for State Farm to interpret its policy as it did because "'every other court faced with the issue before this Court has concluded that the "Each Person" limitation applies to a wrongful death claim.'" (Quoting *Bowen I* at 9.) While the District Court acknowledged that additional coverage was found in *Freyer I*, it concluded that State Farm had not been unreasonable in the determination about coverage it had made. Because State Farm had a "reasonable basis in law" to contest coverage, the District Court dismissed all of Frank's and Vail's claims. As to State Farm's statute of limitations defense, the court concluded that Vail's and Frank's 2011 amended complaints were filed merely to reflect the shift in the parties' respective positions pursuant to the assignment of rights, and therefore did not "state any new theory or claim for relief" from their 2008 counterclaims. Thus, State Farm had waived its statute of

9

limitations defense by failing to assert the defense in its answer to the counterclaims filed in 2008.

¶21 All parties appeal the District Court's order. Vail and Frank appeal from the District Court's order disposing of all of their claims. State Farm cross-appeals the District Court's order dismissing its statute of limitations defense.

## STANDARD OF REVIEW

¶22 A district court's grant or denial of summary judgment is reviewed de novo, utilizing the same analysis as the district court pursuant to Rule 56 of the Montana Rules of Civil Procedure. *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 36, 345 Mont. 12, 192 P.3d 186. "The interpretation of an insurance contract [is] a question of law." *Modroo v. Nationwide Mut. Fire Ins. Co.*, 2008 MT 275, ¶ 23, 345 Mont. 262, 191 P.3d 389. A district court's legal conclusions are reviewed for correctness. *Crane Creek Ranch, Inc. v. Cresap*, 2004 MT 351, ¶ 8, 324 Mont. 366, 103 P.3d 535.

## DISCUSSION

¶23 Frank and Vail assert that the District Court erred by dismissing their (1) breach of contract claims and (2) § 33-18-201(1) UTPA claims. In addition, Frank asserts that the District Court erred by dismissing his third-party bad-faith claim against State Farm and his first-party claim for breach of the covenant of good faith and fair dealing that was assigned to the Estate by Vail. The District Court held that State Farm was entitled to summary judgment on all of these claims because it had a "reasonable basis in law" to dispute coverage. We address these claims in turn, and hold that the District Court erred

10

by applying a "reasonable basis in law" defense to Frank and Vail's breach of contract claim, but did not err by applying that defense to the remaining claims.

¶24   *1. Did the District Court err by concluding that State Farm had not breached the insurance contract when it failed to indemnify Vail for Alicia's derivative claims because it had a "reasonable basis in law" to challenge coverage of those claims?*

¶25   Frank and Vail argue that, under contract law, a breach is a breach—it does not matter if the breaching party was "reasonable" in its breach. They assert the District Court erred by concluding that State Farm did not breach its duty to pay Alicia's claims when it wrongfully denied coverage for her derivative claims because State Farm had a "reasonable basis in law" to contest coverage for those claims. State Farm responds that its payment of policy limits, prejudgment interest and Freyers' attorneys' fees in pursuing the coverage determination leading to *Freyer I* has mooted Frank's and Vail's breach of contract claims and, in any event, the District Court properly applied the reasonable basis in law defense. We reject the mootness argument. An issue is moot when "'the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position . . . .'" *Gateway Opencut Mining v. Bd. of Co. Commrs.*, 2011 MT 198, ¶ 16, 361 Mont. 398, 260 P.3d 133 (quoting *Greater Missoula Area Fedn. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 23, 353 Mont. 201, 219 P.3d 881). Freyers are seeking damages for breach of the insurance contract beyond the payments made by State Farm. As further developed herein, it is possible that further relief could be granted.

11

¶26 The duty to defend and the duty to indemnify are different, and those differences compel the results ultimately reached herein. The duty to indemnify is independent of and narrower than the duty to defend. Unlike an insurer's duty to defend, which arises "when 'a complaint against an insured *alleges facts*, *which if proven*, would result in coverage[,]'" an insurer's duty to indemnify arises only if coverage under the policy is actually established. *State Farm Fire & Cas. Co. v. Schwan*, 2013 MT 216, ¶ 15, 371 Mont. 192, ___ P.3d ___ (emphasis added) (quoting *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 21, 321 Mont. 99, 90 P.3d 381, in turn citing *St. Paul Fire & Marine Ins. Co. v. Thompson*, 150 Mont. 182, 188, 433 P.2d 795, 799 (1967) and *Grindheim v. Safeco Ins. Co.*, 908 F. Supp. 794, 800 (D. Mont. 1995)). Put another way, while an insurer's duty to defend is triggered by allegations, "[a]n insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts, proven, stipulated or otherwise established that actually create the insured's liability." 43 Am. Jur. 2d *Insurance* § 676 (West 2013).

¶27 "Insurance agreements are contracts that are subject to the general rules of contract law." *Fisher ex rel. McCartney v. State Farm Mut. Aut. Ins. Co.*, 2013 MT 208, ¶ 25, 371 Mont. 147, 305 P.3d 861 (citing *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 2005 MT 50, ¶ 17, 326 Mont. 174, 108 P.3d 469). This general principle includes the determination of whether an insurer has breached a provision of the insurance contract. Under contract law, "a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract." Richard A.

12

Lord, *Williston on Contracts* vol. 23, § 63:1 at 434 (4th ed., West Group 2002). Hence, the contractual duty to indemnify is breached when an "insurer has wrongfully refused to provide coverage to an insured." *Yovish v. United Servs. Aut. Assn.*, 243 Mont. 284, 291, 794 P.2d 682, 686 (1990) *overruled on other grounds in Mt. West Farm Bureau Mut. Ins. Co. v. Brewer*, 2003 MT 98, ¶ 20, 315 Mont. 231, 69 P.3d 652; *accord Davis v. Criterion Ins. Co.*, 754 P.2d 1331, 1332 (Alaska 1988). An insurer thus breaches the duty to indemnify by failing to provide coverage when (1) the established facts trigger coverage under the terms of the policy, and (2) the extent of the claimant's damages are undisputed or clearly exceed policy limits. *Cf. Yovish*, 243 Mont. at 286-88, 794 P.2d at 684-85 (USAA breached duty to indemnify because it denied coverage based on non-renewal even though clear terms of policy, and Montana law, required insurer to provide adequate notice of cancelation or non-renewal of coverage, and the property damage to insured's car and other car was undisputed); *Brewer*, ¶ 36 (insurer breached duty to indemnify when it incorrectly interpreted policy to exclude newly acquired car from coverage) (factual history in *Christensen v. Mt. West Farm Bureau Mut. Ins. Co.*, 2000 MT 378, 303 Mont. 493, 22 P.3d 624). "Established facts" in this context are facts that are either undisputed or are initially disputed but subsequently determined by the fact finder. When facts necessary to determine the existence of coverage are contested in an underlying action, the insurer cannot be said to have yet breached the duty to indemnify. *See Skinner v. Allstate Ins. Co.*, 2005 MT 323, ¶¶ 18-19, 329 Mont. 511, 127 P.3d 359 (court could not issue order determining duty to indemnify because issues of personal liability of the

13

insured were yet to be determined in an underlying case); *Northfield Ins. Co. v. Mont. Assn. of Cos.*, 2000 MT 256, ¶ 17, 301 Mont. 472, 10 P.3d 813 (court could not determine secondary insurer's duty to indemnify because underlying litigation had not determined insured's liability and primary insurer's coverage cannot be said to have been exceeded).

¶28    Here, Freyers asserted derivative claims for damages sustained by Alicia arising from her father's death caused by Vail's negligent driving, and argued for coverage under State Farm's policy. State Farm did not challenge Frank's assertion that the value of Alicia's derivative claims exceeded the $50,000 Each Person limits of the policy. This Court held that State Farm incorrectly interpreted its policy by applying a single Each Person coverage limit and refusing further payment for Alicia's claims. *Freyer I*, ¶¶ 13-16. Consequently, State Farm breached its duty to indemnify Vail to the proper limits of its policy against Alicia's derivative claims, and it breached the insurance contract by so doing.

¶29    A breach of contract cannot be ameliorated by the reasonableness of the breaching party's actions. The District Court thus erred by permitting State Farm to raise a "reasonable basis in law" defense to Frank's and Vail's breach of contract claims. *See* Kerry B. Harvey & Thomas A. Wiseman III, *First Party Bad Faith*: *Common Law Remedies and a Proposed Legislative Solution*, 72 Ky. L.J. 141, 163 (1983-84) ("Contract law, being amoral, does not inquire into the defendant's state of mind at the time of the breach."). We thus turn to the measure of damages for State Farm's breach.

14

¶30     Frank and Vail entered a stipulated judgment against Vail for $2.7 million.[1]  Vail argues that this is the measure of damages and offers that this Court and Montana's Federal District Court have "repeatedly held that an insurer who breaches the contract is liable for all damages flowing from that breach, including judgments against the insured," citing *Indep. Milk & Cream Co. v. Aetna Life Ins. Co.*, 68 Mont. 152, 156-57, 216 P. 1109, 1110 (1923); *Staples*, ¶¶ 20, 24, 27, 31; *Lee v. USAA Cas. Ins. Co.*, 2004 MT 54, ¶¶ 19-21, 320 Mont. 174, 86 P.3d 562; *Grindheim*, 908 F. Supp. at 797, 808; *Nielsen v. TIG Ins. Co.*, 442 F. Supp. 2d 972, 975-76 (D. Mont. 2006).  However, as State Farm correctly notes, all of these cases cited by Vail involve breaches of the duty to defend, not the duty to indemnify, and "this Court has never approved a confessed judgment as the proper measure of damages where the insurer defended its insured."

¶31     We start with the principle that an insurer's wrongful refusal to indemnify entitles its insured to recover consequential damages.  *See Mont. Petroleum Tank Release Comp. Bd. v. Crumleys*, 2008 MT 2, ¶ 64, 341 Mont. 33, 174 P.3d 948; *Safeco Ins. Co. v. Munroe*, 165 Mont. 185, 192, 527 P.2d 64, 68 (1974) (holding that insured was entitled to consequential damages).  "Consequential damages are those damages 'within the contemplation of the parties when they entered into the contract, and such as might

---

[1] In entering the stipulated judgment, Vail was represented by her counsel who was provided by State Farm, pursuant to the automobile liability policy.

naturally be expected to result from its violation.'" *Crumleys*, ¶ 64 (quoting *Martel Const., Inc. v. State*, 249 Mont. 507, 511, 817 P.2d 677, 679 (1991)).[2]

¶32 The Colorado Supreme Court addressed a strikingly similar case in *Old Republic Ins. Co. v. Ross*, 180 P.3d 427 (Colo. 2008) (en banc). Surviving spouses and children (the Rosses) of two passengers who died in a plane crash sued the airline company for their wrongful deaths. *Old Republic*, 180 P.3d at 428. The airline company was insured by Old Republic under an aviation policy and a commercial general liability policy. *Old Republic*, 180 P.3d at 429. At the outset of litigation, Old Republic tendered $200,000 to the Rosses, which it believed was the maximum coverage available under the aviation policy. *Old Republic*, 180 P.3d at 429. Old Republic disputed coverage under the commercial general liability policy, which had a policy limit of $1 million, and therefore, rejected the Rosses' settlement demand of $800,000. *Old Republic*, 180 P.3d at 429. Old Republic filed an action in federal court seeking a declaration that its policy interpretation was correct and that its contractual obligation to the Rosses had been fulfilled by the $200,000 payment. *Old Republic*, 180 P.3d at 429. While the declaratory action was pending, the Rosses entered a settlement with the airline company wherein the airline company confessed judgment in the amount of $4 million, plus prejudgment interest of $1.3 million, for a total stipulated settlement of $5.3 million. Rosses agreed not to execute upon the airline company. *Old Republic*, 180 P.3d at 429.

---

[2] This definition of consequential damages is taken directly from § 27-1-311, MCA, which permits the recovery of both proximate and consequential damages for breach of contract. *See Crumleys*, ¶ 64.

16

¶33     In the declaratory action, Old Republic contended that coverage under the aviation policy was limited to $100,000 for each passenger, or $200,000 total for the two passengers, and did not provide additional coverage for the derivative claims of mental anguish brought by deceased passengers' family members. *Old Republic Ins. Co. v. Durango Air Service, Inc.*, 283 F.3d 1222, 1226-27 (10th Cir. 2002) (hereinafter *Old Republic Declaratory Action*). The Tenth Circuit for the United States Court of Appeals ultimately concluded that the aviation policy provided $700,000 in coverage for the plane crash, and construed an ambiguity in the commercial general liability policy in favor of additional coverage for the airline company. *Old Republic Declaratory Action*, 283 F.3d at 1227-28, 1230. Thus, the Tenth Circuit concluded that the two policies provided $1.7 million in coverage. *Old Republic Declaratory Action*, 283 F.3d at 1231.[3]

¶34     Consequently, there were now two judgments: the state court stipulated judgment against the airline company for $5.3 million, and the federal judgment declaring coverage limits of $1.7 million under the policies. *Old Republic*, 180 P.3d at 429. Old Republic paid $1.7 million to satisfy the declaratory judgment of policy limits, but refused to pay any further amount toward the stipulated judgment. *Old Republic*, 180 P.3d at 429.

---

[3] The insurer was incorrect about its interpretation of the policy because the policy specifically distinguished between claims brought by passengers and claims brought by others. *Old Republic Declaratory Action*, 283 F.3d at 1227. Hence, the court held that the 10 family members of the passengers could bring individual claims for "mental anguish." *Old Republic Declaratory Action*, 283 F.3d at 1227. However, a Colorado statute limited recovery of noneconomic damages in a wrongful death action to $250,000. *Old Republic Declaratory Action*, 283 F.3d at 1228. The policy therefore provided $200,000 ($100,000 x 2) for the bodily injury of the deceased passengers and $500,000 ($250,000 x 2) for the "mental anguish" suffered by the passengers' family members. *Old Republic Declaratory Action*, 283 F.3d at 1228.

Similar to the case before us, the Rosses asked the Colorado Supreme Court to enforce the stipulated judgment with the airline company as the proper measure of damages for Old Republic's incorrect interpretation of both its policies. *Old Republic*, 180 P.3d at 428. In rejecting the Rosses' request, the court surveyed the jurisdictions that had addressed the enforcement of pretrial stipulated judgments:

> We find no jurisdiction that would enforce a pretrial stipulated judgment against an insurer who was not a party to the underlying settlement agreement unless the insurer acted in bad faith, denied coverage, or refused to defend the claim on behalf of the insured. We therefore decline to extend [Colorado law] to encompass a settlement agreement entered under these circumstances.
>
> The majority rule in states that have considered this issue is that *a pretrial stipulated judgment may be enforceable against the defendant's liability insurer if the insurer breaches its contractual obligation to defend the insured*. Under the majority view, when an insurer improperly abandons its insured, the insured is justified in taking steps to limit his or her personal liability.
>
> .   .   .
>
> A number of states have adopted a modification of the majority rule, demonstrating a willingness to enforce pretrial stipulated judgments under various enumerated circumstances. . . . In sum, many states broaden the circumstances under which a stipulated judgment may be enforceable, *but none of these states has enforced a pretrial stipulated judgment against an insurer where the insurer has conceded coverage and defended its insured, and where there has been no finding of bad faith against the insurer*.
>
> .   .   .
>
> We conclude that under the facts of this case, where the insurer has conceded coverage and defended its insured, and where there has been no finding of bad faith against the insurer, a stipulated judgment entered before trial, to which the insurer is not a party, cannot be enforced against the insurer.

*Old Republic*, 180 P.3d 432-34 (emphasis added; internal citations omitted).

¶35    The California Supreme Court has likewise disapproved of stipulated judgments as a measure of an insured's damages when the insurer has provided a defense for the insured.  In *Hamilton v. Maryland Cas. Co.*, 41 P.3d 128, 131 (Cal. 2002), the insurer defended its insureds but refused the claimants' demand for the $1 million policy limits, instead countering with a $150,000 offer to settle.  The insureds and claimants subsequently entered into a stipulated judgment of $3 million; the insureds assigned any breach of contract claims they might have against the insurer, and, in return, the claimants agreed not to execute the $3 million judgment against the insureds.  *Hamilton*, 41 P.3d at 131.  The claimants then sued the insurer for breach of contract arising from its failure to accept the claimants' settlement offers, asserting that the $3 million stipulated judgment was the appropriate measure of damages for the breach.  *Hamilton*, 41 P.3d at 131-32.  The California Supreme Court disagreed, holding:

> Where, as here, the insured, without the insurer's agreement, stipulates to a judgment against it in excess of both the policy limits and the previously rejected settlement offer, and the stipulated judgment is coupled with a covenant not to execute, the agreed judgment cannot fairly be attributed to the insurer's conduct, even if the insurer's refusal to settle within the policy limits was unreasonable.

*Hamilton*, 41 P.3d at 137.  Importantly, the *Hamilton* Court distinguished cases where the insurer had failed to defend from cases where the insurer did defend, and reasoned that a stipulated judgment was presumptively enforceable as the measure of damages only in the former instance, because the non-defending insurer has left its insured on its own to challenge liability, and the insurer should not be able to "reach back" and interject itself into a controversy it has sidestepped to "void a deal the insured has entered to eliminate

19

personal liability." *Hamilton*, 41 P.3d at 135 (citation and quotation marks omitted). Conversely, however, when "the insurer has *accepted* defense of the claim, and might have prevailed at trial had the insured and the claimants not settled without the insurer's participation, no presumption of the insured's liability generally arises from the fact or amount of settlement." *Hamilton*, 41 P.3d at 135 (emphasis in original).

¶36    These cases are representative of what occurred in the case before us, and we find their reasoning persuasive. When an insurer defends the insured against a claim, and challenges coverage in a separate declaratory action, a stipulated settlement that relieves the insured of any financial stake in the outcome of the case does not represent the damages "within the contemplation of the parties when they entered into the [insurance] contract, and such as might naturally be expected to result from its violation." *Crumleys*, ¶ 64 (internal quotation omitted). The insured has little incentive to minimize the settlement amount in negotiating a stipulated judgment. Nor is there any assurance that a stipulated judgment represents a proper calculation of the actual damages incurred by way of the breach. These concerns are clearly evident in the case before us. First, under the settlement, Vail has escaped all risk by simply assigning her insurance dispute with State Farm to Frank. The size of the judgment was essentially irrelevant to her. Then, the stipulated judgment does not, by its own terms, represent the correct measure of damages for the denial of *Alicia's* claims—the only denial forming State Farm's breach. As explained above, the settlement agreement provides that $1.7 million of the $2.7 million total represents the economic loss to *Heath's Estate*. Yet, State Farm did not err

20

in any way in adjusting and settling the claims made by Heath's Estate. State Farm tendered the full $50,000 Each Person coverage limit to Heath's Estate and did not breach its duty to indemnify Vail for Heath's claims. Thus, the bulk of the face amount of the stipulated judgment does not represent any measure of damages resulting from State Farm's breach of its duty to indemnify Vail for Alicia's claims. Alicia would not be entitled to the $1.7 million in damages Heath's Estate suffered even had the case proceeded to trial. The economic loss the decedent's estate suffers, as measured by the "present value of [the decedent's] reasonable earnings during his life expectancy," is "personal to the decedent" and does not "include any damages suffered by the decedent's widow, *children*, or other heirs." *Swanson v. Champion Intl. Corp.*, 197 Mont. 509, 515, 646 P.2d 1166, 1169 (1982) (emphasis added; citations omitted). Alicia's claims, on the other hand, were to compensate her personal loss of her father—loss of support, loss of companionship, loss of established course of life, etc. These wrongful-death claims are measured, not by the economic loss to the decedent's estate, but, rather, the emotional, physical, and monetary support the decedent would have provided the heir. *Swanson*, 197 Mont. at 517-18, 646 P.2d at 1170-71.

¶37    The rule articulated by these jurisdictions is even more appropriate for Montana, given that State Farm pursued the action we have repeatedly admonished insurers to take if there is a coverage question—defend the insured and file a declaratory judgment action to discern coverage. *See e.g. Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 102-03, 861 P.2d 895, 902 (1993); *see also St. Paul Fire & Marine Ins. Co. v. Cumiskey,*

21

204 Mont. 350, 358, 665 P.2d 223, 227 (1983) ("an insurer may use this procedural device in order to obtain a determination of the validity, continuance, or coverage of an insurance policy; a determination of the extent of liability; *or a determination of the insurer's duties under the policy*.") (emphasis added); *Staples*, ¶ 28 ("If FUMIC wished to dispute coverage, it could have defended Staples under a reservation of rights and later sought judicial determination through a declaratory judgment action to determine whether coverage existed."); *Brewer*, ¶ 30; *see also Nielsen*, 442 F. Supp. 2d at 977. This practice is also urged by leading commentators. *See* Appleman, *Insurance Law & Practice* vol. 20, § 11354 at 332-33 (West Publg. 1980) ("The insurer thus has a right to test [through a declaratory judgment action] its liability to pay judgments which may be recovered against the insured, or to test its liability for penalties and interest.") (collecting cases); Allan D. Windt, *Insurance Claims & Disputes*: *Representation of Insurance Companies & Insureds* vol. 2, § 8.3 at 8-5 to 8-6 (6th ed., Thomson Reuters 2013) (noting it is appropriate for insurer to institute declaratory action after insured suffers loss so insurer can "determine whether the company is obligated to pay all or any part of the judgment or loss."); *Couch on Insurance* vol. 16, § 232:47 (Lee R. Russ & Thomas F. Segalla, eds., 3d ed., Thomson/West 2005) ("In essence, where language in the insurance contract is thought to need clarification in order to determine the legal positions of the parties, declaratory action is appropriate."). Lord, *Williston on Contracts* vol. 11, § 30:2 at 36-37 (West 2012) ("A frequently employed means of demonstrating in an authoritative manner the intent of the parties to a contract, either for the purpose of establishing rights or the

22

nonexistence of liabilities, is the petition for declaratory judgment. Insurance companies have often used this procedure in seeking a declaration from the courts that because of some exclusionary provision or false representation by the insured, they are not liable on a given policy which they have issued.").[4] The rule also recognizes the distinctions between the duty to defend and the duty to indemnify. The broader duty to defend requires an insurer to act immediately to defend the insured from a claim. The insurer must do so on the basis of mere allegations that could implicate coverage, if proven. *Schwan*, ¶ 15. On the other hand, the narrower duty to indemnify typically involves complicated interpretational questions that often require legal opinions and separate declaratory actions to determine.

¶38    A rule to the contrary would allow insureds to unilaterally inflate policy limits anytime an insurer tests coverage through a declaratory action. As State Farm notes, "[b]asically, Frank's and Vail's position is that all an insured has to do is file suit, enter a confession of judgment, obtain a covenant not to execute, and the insurer becomes liable for the confessed judgment, regardless of whether the insurer pays limits as asked or has a reasonable basis in fact or law for disputing the amount of the claim and defending the underlying action." Indeed, while Frank was willing to settle all claims against Vail for $100,000 if State Farm would foot the bill, the demand ballooned to $2.6 million when Vail's financial responsibility was removed from the equation.

---

[4] Alicia's and Heath's claims did not implicate State Farm's duty to pay, in advance of final settlement, actual medical payments and lost wages of a tort victim when "liability is reasonably clear." *Ridley v. Guar. Natl. Ins. Co.*, 286 Mont. 325, 327, 951 P.2d 987, 988 (1997) (med pay); *DuBray v. Farmers Ins. Exch.*, 2001 MT 251, ¶ 15, 307 Mont. 134, 36 P.3d 897 (lost wages).

¶39    Vail points to several cases which, when closely analyzed, do not address the issue here. In *Ariz. Prop. & Cas. Ins. Guar. Fund v. Helme*, 735 P.2d 451, 460 (Ariz. 1987), the Arizona Supreme Court held that doctors sued for malpractice did not breach their *duty to cooperate* with their insurer's defense of them by entering a settlement with the claimants after the insurer breached its duty to indemnify. The insurer erroneously interpreted the coverage available as limited to a per occurrence limit of $99,900. *Helme*, 735 P.2d at 454, 457. In a declaratory action, a court determined that there had been two occurrences. *Helme*, 735 P.2d at 455. Meanwhile, the doctors settled with the claimants for $350,000 in exchange for the claimants' covenant not to execute against the doctors. *Helme*, 735 P.2d at 455. The insurer sought a declaration that it was not obligated to pay the survivors *on the second claim*—not the total settlement amount of $350,000— because the doctors had settled without the insurer's permission. *Helme*, 735 P.2d at 458. The Court disagreed, holding that the insurer's breach of its duty to indemnify under the policy permitted the insured to take "reasonable steps" to save himself from the financial disaster of an excess judgment, including settling with the claimants. *Helme*, 735 P.2d at 460. However, the Court specifically noted that it was not determining whether that settlement would be binding on the insurer: "The parties have not argued, and this opinion does not reach, any issue regarding the extent to which the stipulations which form part of the settlement agreement are binding upon the insurer." *Helme*, 735 P.2d at 460. Put another way, the Arizona Court did not hold that the insurer was bound to pay the stipulated judgment, but rather concluded the insurer was required to pay the

24

appropriate policy limits for two occurrences, even though the insureds had settled without its permission.

¶40     Vail also cites *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982). There, while the insurer was litigating whether it had coverage, the insured stipulated to a $100,000 judgment—twice the $50,000 limit of the policy—with the claimant in exchange for a covenant not to execute against him. *Miller*, 316 N.W.2d at 731-32. After the Court had determined that coverage existed, the claimant sought to enforce only $50,000 of the stipulated judgment, which represented the policy limits. The insurer countered that it owed nothing because the insured had breached the cooperation clause of the policy. *Miller*, 316 N.W.2d at 732. The Minnesota Supreme Court, like the Arizona Supreme Court in *Helme*, concluded that because the insurer had failed to indemnify its insured, the insured did not breach his duty to cooperate by entering a settlement to protect his personal finances:

> If, as here, the insureds are offered a settlement that effectively relieves them of any personal liability, at a time when their insurance coverage is in doubt, surely it cannot be said that it is not in their best interest to accept the offer. Nor, do we think, can the insurer who is disputing coverage compel the insureds to forego a settlement which is in their best interests.

*Miller*, 316 N.W.2d at 733-34. While the Court ultimately concluded that the stipulated judgment was enforceable upon the insurer, it was only enforceable *up to the policy limits*: "Nor is there anything wrong with the insureds' confessing judgment in an amount double the policy limits, since plaintiff, in her motion for summary judgment, has recognized [the insurer's] coverage is only $50,000 and seeks to recover no more than

25

that sum from [the insurer]." *Miller*, 316 N.W.2d at 734. In sum, the Minnesota Supreme Court never approved binding the insurer to a stipulated judgment in excess of policy limits.[5]

¶41 The other cases Vail cites are also unavailing because they are either cases involving a breach of the duty to defend *and* the court refused to enforce the stipulated judgment on the insurer, *Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599 (Alaska 2003) or, like the cases above, hold that the insured did not breach its duty to cooperate, and therefore is entitled to be indemnified for the settlement up to policy limits. *See Presrite Corp. v. Commercial Union Ins. Co.*, 680 N.E.2d 216, 217, 220-21 (Ohio App. 8th Dist. 1996) (insurer required to pay settlement the "policy afforded" because insured did not breach duty to cooperate when it settled lawsuit after insurer denied coverage thereby exposing insured to entire amount of potential damage award).[6] In sum, none of the cases urged by Vail support the holding she asks for today: a

---

[5] Moreover, three years later the Minnesota Supreme Court limited *Miller*'s holding to situations where the insurer had denied *all* coverage under the policy. *Buysse v. Baumann-Furrie & Co.*, 448 N.W.2d 865, 873-74 (Minn. 1989). There, because the insurer was only arguing over the extent of coverage to a claim—whether the insured accounting firm was entitled to only the $500,000 "each error" limit or whether it was entitled to the $1,000,000 "per year" limit—the insured's stipulated judgment with the claimants was not binding on the insurer. *Buysse*, 448 N.W.2d at 875. The Court's decision was founded on the practical point that, without such a rule, insureds could unilaterally bind insurers to settlements in every case where coverage was contested. *Buysse*, 448 N.W.2d at 872.

[6] Amicus MTLA and Vail argue that *Peris v. Safeco Ins. Co.*, 276 Mont. 486, 493-94, 916 P.2d 780, 785 (1996) controls here. However, like the other cases cited, *Peris* does not stand for the proposition that an insurer who defends the insured while contesting coverage is *bound* to a stipulated judgment if it is later determined the insurer was wrong on the coverage issue. Instead, like *Helme* and *Miller*, *Peris* merely holds that the insured is permitted, without voiding the insurance contract via its duty to cooperate with the insurer, to enter settlement.

stipulated judgment in excess of policy limits coupled with a covenant not to execute against the insured is the proper measure of damages when an insurer is defending its insured but contesting coverage.

¶42 As noted above, an insurer's wrongful refusal to indemnify entitles its insured to recover consequential damages. *Crumleys*, ¶ 64. In *Crumleys*, we awarded the insured's assignee the "administrative costs" incurred when the insurer denied coverage to extract an underground storage tank and remediate the area for leaking gasoline. *Crumleys*, ¶¶ 70-71. We reasoned that the property liability policy contemplated management and oversight costs of pollutant cleanup and that the administrative costs incurred in coordinating and managing the extraction and remediation were the natural consequence of the insurer's failure to step in and begin that cleanup. *Crumleys*, ¶¶ 70-71. An insurer is also "liable for attorney fees when the insurer breaches its duty to indemnify." *Brewer*, ¶ 36. Other courts have permitted insureds to recover lost profits as consequential damages from the wrongful denial or delay of coverage. *See Lawrence v. Will Darrah & Assocs., Inc.*, 516 N.W.2d 43 (Mich. 1994) (permitting insured to recover payment under an insurance policy for a stolen truck and for lost profits arising from insurer's breach of duty to indemnify); *Bettius & Sanderson, P.C. v. Natl. Union Fire Ins. Co.*, 839 F.2d 1009 (4th Cir. 1988) (professional corporation entitled to lost profits based on insurer's unjustifiable delay in settling third-party claim); *Salamey v. Aetna Cas. & Sur. Co.*, 741 F.2d 874 (6th Cir. 1984) (convenience-store owner permitted to recover lost profits resulting from insurer's wrongful refusal to pay benefits for fire loss); *accord* Windt,

*Insurance Claims & Disputes* at § 6:39 (collecting cases which have held that the proper measure of damages arising from insurer's "breach of a contract to pay money" includes consequential damages but not listing stipulated judgments as a measure of those consequential damages). We offer these cases merely as examples of cases employing the principle that consequential damages are "those damages 'within the contemplation of the parties when they entered into the contract, and such as might naturally be expected to result from its violation.'" *Crumleys*, ¶ 64 (quoting *Martel Constr.*, 249 Mont. at 511, 817 P.2d at 679).

¶43 The District Court correctly refused to require State Farm to pay the stipulated judgment. However, we remand to the District Court to determine, in the first instance, the amount of damages, if any, Vail incurred because of State Farm's breach of its duty to indemnify.

¶44 *2. Did the District Court err in granting summary judgment to State Farm on the common-law bad faith and breach of the covenant of good faith and fair dealing claims?*

¶45 In his capacity as assignee of Vail's claims, Frank asserts that State Farm breached its duty of "good faith and fair dealing" to Vail by refusing to accept the reasonable offer from Frank to settle Alicia's claims for $50,000 (first party claim). On behalf of Heath's Estate and Alicia, he asserts that State Farm committed bad faith when it failed to settle for this amount (third party claims). The District Court dismissed these claims on the ground that State Farm had a reasonable basis in law to contest coverage, which it reasoned was a complete defense to these causes of action.

28

¶46    In *Jessen v. O'Daniel*, 210 F. Supp. 317 (D. Mont. 1962), Judge Jameson provided an early explanation of the origins of an insurer's duty to settle. Although insurance policies do not contain explicit contractual provisions requiring an insurer to accept reasonable settlement offers within the policy limits, a duty of "good faith" consideration of settlement offers arises by implication from the policy's delegation to the insurer the authority to settle third-party claims. *Jessen*, 210 F. Supp. at 325-26. Judge Jameson pointed out that an insurer's "[e]rror in judgment in not settling a case within the policy limits is not in itself sufficient to impose liability upon the insurer for any recovery in excess of the limits; nor is the mere fact that the insurer was unsuccessful in the trial of the case sufficient to show that the defense was not made in good faith." *Jessen*, 210 F. Supp. at 325. Rather, whether an insurer acted in "good faith" had to be made on a case-by-case basis. *Jessen*, 210 F. Supp. at 326.

¶47    In *Fowler v. State Farm Mut. Aut. Ins. Co.*, this Court adopted the *Jessen* formulation of the duty to settle, and rejected the plaintiff's request to adopt a strict-liability remedy for an insurer's failure to settle a third-party claim that had led to an excess judgment. 153 Mont. 74, 78-80, 454 P.2d 76, 78-79 (1969) ("To the extent that [ ] *Crisci* [*v. Security Ins. Co. of New Haven*, 426 P.2d 173 (Cal. 1967)] is viewed as abandoning any requirement of proof of bad faith, we would reject it"); *accord Thompson v. State Farm Mut. Aut. Ins. Co.*, 161 Mont. 207, 215, 505 P.2d 423, 427 (1973) *overruled on other grounds by Watters v. Guar. Natl. Ins. Co.*, 2000 MT 150, ¶ 63, 300 Mont. 91, 3 P.3d 626. In *Gibson v. Western Fire Ins. Co.*, 210 Mont. 267, 274, 682 P.2d

725, 730 (1984), we held "[i]t is now fairly established in American jurisprudence that an insurer which *in bad faith* fails to settle a bona fide third party liability claim against its insured, within policy coverage limits, takes the risk of a judgment by the trier of fact in excess of the coverage limits." (Emphasis added.) We subsequently addressed the bad faith issue and held that an insurer does not act in bad faith in rejecting a settlement if it had a reasonable basis in law or fact to contest the claim or the amount of the claim. *Safeco Ins. Co. v. Ellinghouse*, 223 Mont. 239, 248, 725 P.2d 217, 223 (1986) ("It is generally held that an insurer is entitled to challenge a claim on the basis of debatable law or facts and will not be liable for the bad faith or punitive damages for denying coverage if its position is not wholly unreasonable."); *Palmer by Diacon*, 261 Mont. at 102, 861 P.2d at 901 ("Under Montana common law, an insurer cannot be held liable for bad faith in denying a claim if the insurer had a reasonable basis for contesting the claim or the amount of the claim."); *White v. State ex rel. Mont. St. Fund*, 2013 MT 187, ¶ 24, 371 Mont. 1, 305 P.3d 795 (same) (quoting *Palmer by Diacon*). We have never held an insurer liable in bad faith for failing to settle within policy limits when it had a reasonable basis in law or fact for contesting coverage. Although Freyers request that we deviate from our well-settled precedent on this issue, we decline.

¶48 "To determine whether an insurer had 'a reasonable basis in law . . . for contesting the claim or the amount of the claim,' it is necessary first to survey the legal landscape as it existed during the relevant time period." *Redies v. Attys. Liab. Protec. Socy.*, 2007 MT 9, ¶ 29, 335 Mont. 233, 150 P.3d 930 (quoting § 33-18-242(5), MCA). In *Redies*, ¶¶ 30-

30

35, we reconciled our previous cases analyzing whether reasonableness is a question of fact for the jury or a question of law for the court. We concluded that although the determination of whether a party acted reasonably was typically a question of fact for the jury, whether an insurer was reasonable in its interpretation of legal precedent in its coverage determination was a question of law for the court:

> [W]e now clarify that while the assessment of reasonableness generally is within the province of the jury (or the court acting as fact-finder), *reasonableness is a question of law for the court to determine when it depends entirely on interpreting relevant legal precedents and evaluating the insurer's proffered defense under those precedents.* This distinction not only reflects the principle that the jury does not decide or determine the law, but also honors the relevant language of the [UTPA's reasonable basis in law defense].

*Redies*, ¶ 35 (emphasis added; citations omitted). Then, the court must assess the insurer's proffered defense in light of that legal landscape. The reviewing court is not to ask whether it "agree[s] with the plaintiff's theories of liability in the underlying suit but, rather, whether the insurer's grounds for contesting those theories were reasonable under the existing law." *Redies*, ¶ 38. In the absence of caselaw on point, "the determinative question" is whether the law in effect at the time, caselaw or statutory, provided sufficient guidance to signal to a reasonable insurer that its grounds for denying the claim were not meritorious. *See Redies*, ¶ 43 ("Accordingly, the determinative question is whether this progression in our case law toward holding an attorney liable to certain nonclients had, by the time [the plaintiff] stated her claims against [her lawyer], reached the point at which [the insurer's] assertion that [it] owed her no duty no longer constituted 'a reasonable basis in law' for contesting her claim.").

31

¶49 State Farm contested coverage for Alicia's derivative claims because it believed the "Each Person" limit in the policy unambiguously limited coverage to $50,000 for all claims related to Heath's death. *Freyer I*, ¶¶ 4, 7. State Farm asked its in-house counsel, Ridgeway, for an opinion about whether the policy covered Alicia's derivative claims. Ridgeway advised that courts interpreting the clause had concluded that derivative claims were subject to the same each person limit as the survivorship claim. *See McKinney v. Allstate Ins. Co.*, 722 N.E.2d 1125 (Ill. 1999) ("per person" limit of liability clause "clearly limited" all claims arising out of the decedent's death to a single per person limit); *Geico Gen. Ins. Co. v. Arnold*, 730 So. 2d 782 (Fla. Dist. App. 3d Dist. 1999) ("each person" limit of liability clause not ambiguous and limited wrongful death and survival claims); *Cradoct v. Employers Cas. Co.*, 733 S.W.2d 301 (Tex. App. El Paso 1987) ("per person" limitation applied to person injured in accident, not other persons suffering loss because of that injury). Thus, State Farm took the position that, once it paid the $50,000 Each Person limit to Heath's Estate, it had fulfilled its contractual obligation under the policy for claims related to his death. *Freyer I*, ¶ 11.

¶50 The state of Montana precedent, discussed below, and this "legal landscape" across numerous jurisdictions certainly gave credence to State Farm's decision to contest coverage for Alicia's derivative claims. However, that did not end the inquiry, as State Farm was also required to analyze the claim in light of the specific language of the Limit of Liability clause in Vail's policy, which read:

32

The amount of bodily injury liability coverage is shown on the declarations page under "Limits of Liability–Coverage A-Bodily Injury [-W-], Each Person, Each Accident." *Under "Each Person" is the amount of coverage for all damages due to bodily injury to one person. "Bodily injury to one person" includes all injury and damages to other persons, including emotional distress, sustained by such other persons who do not sustain bodily injury.*

(Emphasis added.) State Farm's position was that the first emphasized sentence limited the amount of coverage for any and all claims arising from the bodily injury to one person to the $50,000 "Each Person" limit. Therefore, because Alicia's derivative claims stemmed from her father's death, and not her own bodily injury, those claims were subject to the same $50,000 limit as Heath's Estate's claims. As to the second sentence, State Farm read it as clarifying that emotional distress claims were likewise subject to the same $50,000 "Each Person" limit.

¶51 Montana precedent that came closest to addressing this issue was *Bain v. Gleason*, 223 Mont. 442, 726 P.2d 1153 (1986) and *Treichel v. State Farm Mut. Auto. Ins. Co.*, 280 Mont. 443, 930 P.2d 661 (1997). In *Bain*, the plaintiff's wife was injured by a negligent driver who was insured under a $25,000 per person and $50,000 per accident policy. *Bain*, 223 Mont. at 444, 726 P.2d at 1154. The insurer paid the $25,000 per person limit, arguing that it constituted the "full extent of and the limit" of coverage under its policy. *Bain*, 223 Mont. at 445, 726 P.2d at 1154. The policy limited the insurer's liability applicable to "each person" to $25,000 "for all damages arising out of bodily injury sustained by one person in any one occurrence." *Bain*, 223 Mont. at 447, 726 P.2d at 1156. Plaintiff-husband brought a loss of consortium cause of action seeking to recover

33

the additional $25,000 under the per accident limit.  We rejected the plaintiff's claim because it was "plain under our statutes, and under the policy provisions here that the 'each person' limitation refers to all damages imposed by law by whomever suffered resulting from one bodily injury and one accident; the 'each accident' limitation applies when two or more persons suffer bodily injury in the same accident." *Bain*, 223 Mont. at 451, 726 P.2d at 1158.  *Bain* did not specifically answer the question in *Freyer I* because there was only one person injured in the accident.  However, its holding, especially when coupled with our analysis of the statutory minimum mandatory limits, suggested that the "Each Person" policy language restricting coverage to $25,000 "for all damages arising out of bodily injury sustained by one person in any one occurrence" meant that no matter how many others were injured in the accident, they could not use their own bodily injury to obtain additional "Each Person" coverage for derivative damages stemming from another's bodily injury.

¶52     In *Treichel*, we analyzed another automobile liability policy that limited coverage to $25,000 per person and $50,000 per accident.  *Treichel*, 280 Mont. at 445, 930 P.2d at 663.  The operative provision read: "Under 'Each person' is the amount of coverage for all damages due to bodily injury to one person." *Treichel*, 280 Mont. at 445, 930 P.2d at 663.  The plaintiff was riding her bicycle some distance behind her husband when she witnessed a motorist, insured with the above-described policy, strike her husband and throw him into the air; she also saw the "severe head wound [the husband] received when his head hit the vehicle's windshield before he fell to the pavement." *Treichel*, 280 Mont.

34

at 444-45, 930 P.2d at 662. The insurer, State Farm, paid the husband's estate the $25,000 per person coverage, but denied paying the plaintiff the remaining $25,000 because her claim was similar to the claim for loss of consortium presented in *Bain*. *Treichel*, 280 Mont. at 448, 930 P.2d at 664. We disagreed with State Farm, distinguishing *Bain* because the loss of consortium claims pursued by the husband there were materially different from the "on the scene, direct physical and emotional impact" the wife suffered in personally watching her husband's grisly death in *Treichel*:

> As the District Court pointed out in the case before us "it is this personal, on the scene, direct physical and emotional impact which distinguishes emotional distress claims under *Sacco* from loss of consortium claims." [The plaintiff] was a separate person who received an independent and direct injury at the accident scene.

*Treichel*, 280 Mont. at 449, 930 P.2d at 665. *Treichel*'s holding suggested that, unlike derivative claims that were not considered "bodily injury" under *Bain*, emotional distress claims would be considered stand-alone bodily injury claims because they stemmed from the personal trauma experienced by an on-the-scene witnessing of bodily injury to another. State Farm then decided that the "Each Person" policy provisions of the kind at issue in *Bain* and *Treichel* needed to be revised. State Farm thereafter modified the language of its "Each Person" limit by adding the sentence at issue in *Freyer I*: "Bodily injury to one person includes all injury and damages to other persons, including emotional distress, sustained by such other persons who do not sustain bodily injury."[7]

---

[7] The record contains communications between State Farm and the State Auditor's Office. State Farm advised the Auditor's Office that it was amending its policy "in response to the court case of *Treichel vs. State Farm*."

Consequently, the "legal landscape" for State Farm's interpretation of the policy language as applied to derivative claims was even more favorable than the landscape that was sufficient to shield the insurer in *Redies*. There, despite noting a "progression in our case law" away from the insurer's coverage position, *Redies*, ¶ 43, we nonetheless agreed with the insurer that at the time of the coverage decision, the law was not reasonably clear. *Redies*, ¶ 57. Here, although *Bain* did not involve a situation where two people suffered bodily injury, it appeared to hold that derivative claims were subject to the "Each Person" limit of the deceased person. *Treichel* appeared to nuance *Bain* by holding that emotional distress claims arising from on-the-scene traumatic experiences would also constitute a bodily injury of the observing person. Then, State Farm took action in response to *Treichel* by supplementing the language of the Limit of Liability clause—which, according to *Bain*, already provided that derivative claims were subject to the deceased person's "Each Person" limit—with an additional sentence that specified that emotional distress claims were likewise subject to the "Each Person" limits of the deceased person. While this drafting fix failed to accomplish its intended purpose in *Freyer I*, ¶¶ 12-14 (interpreting by negative inference the clause's specific mention of "people who do not sustain bodily injury" to mean that derivative claims of those who

36

*did* suffer bodily injury were not subject to "Each Person" limits of the deceased person), its interpretation, while ultimately wrong, was clearly not unreasonable.[8]

¶53 Because under "Montana common law, an insurer cannot be held liable for bad faith in denying a claim if the insurer had a reasonable basis for contesting the claim," State Farm did not breach the covenant of good faith and fair dealing with Vail, nor commit bad faith by failing to settle with Frank. *Ellinghouse*, 223 Mont. at 248, 725 P.2d at 223; *Palmer by Diacon*, 261 Mont. at 102, 861 P.2d at 901-02; *White*, ¶ 24. The District Court properly granted State Farm summary judgment on these claims.[9]

---

[8] The reasonableness of State Farm's position is further evidenced by the fact that Montana's federal district court had agreed with it. Prior to *Freyer I*, Hon. Richard Cebull held that even in a case involving bodily injury to two passengers, the "Limits of Liability" clause prohibited an injured person from recovering derivative claims under their own "Each Person" policy limits. *See Bowen I.* There, like here, two people suffered bodily injury in an accident. A wife suffered "abrasions to her face, a broken right arm, glass imbedded in her forehead, chest contusions, and post-traumatic stress disorder." The husband died from his injuries. *Bowen I* at 1. The vehicle was insured for policy limits of $100,000 for "Each Person" and $300,000 for "Each Accident." After State Farm paid policy limits to the husband's estate, the wife sought derivative damages for her husband's death. *Bowen I* at 1-2. State Farm filed a declaratory judgment action, "seeking a judicial determination of whether the 'Each Person' limit contained in the Bowens' policies applies when there are survival and wrongful death claims arising out of the injury and death of a single insured." *Bowen I* at 2. Judge Cebull analyzed *Bain* and *Treichel* and concluded that the key question was "whether wrongful death and survival claims are more like the loss of consortium claims encountered in *Bain* or the emotional distress claims in *Treichel*." *Bowen I* at 5. Judge Cebull concluded that they were more akin to *Bain* because of the fundamental difference between emotional distress claims and wrongful death/survival claims. *Bowen I* at 8, *aff'd*, 247 Fed. Appx. 901 (9th Cir. 2007).

[9] Vail briefly argues that pursuant to our decision in *Freyer I*, the law-of-the-case doctrine and collateral estoppel prevent State Farm from arguing it had a reasonable basis in law to challenge coverage. To the extent Vail is arguing that because *Freyer I* turned on the Court's interpretation of policy language, instead of case law, her argument is unavailing because the "interpretation of an insurance contract presents a question of law." *Modroo*, ¶ 23. Collateral estoppel is likewise inapplicable because *Freyer I* did not decide that State Farm's interpretation was unreasonable. Thus, State Farm is not reopening an issue already decided by this Court. *See Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267.

37

¶54 The Dissent would reverse and remand for trial on the basis of *Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122, 315 Mont. 519, 70 P.3d 721, citing an insurer's obligation to attempt to settle within policy limits when "liability is reasonably clear," and the possibility that a "reasonable jury could conclude . . . State Farm breached its obligation to attempt settlement within policy limits, thus placing the insured in jeopardy." Dissent, ¶ 68. However, this case is not a *Shilhanek* situation, because *Shilhanek* did not involve a coverage issue. Without coverage, a duty to settle does not arise, even if the facts of the accident indicate that the insured's liability, i.e., her negligence, is reasonably clear. *See Mowry v. Badger St. Mut. Cas. Co.*, 385 N.W.2d 171, 178 (Wis. 1986) (the insurer's "duty to settle is dependent upon whether the policy extends coverage for the circumstances underlying the harm sustained."). Here, State Farm contested, not whether Vail's liability for the accident was reasonably clear, but whether there was coverage at all for the claim. The Dissent notes there was no question about Vail's liability for the accident. Had there had been no coverage issues, and State Farm had still refused to budge from its $5,000 offer, *Shilhanek* would have been implicated and this would be a different case.

¶55 The Dissent cites *Dean v. Austin Mut. Ins. Co.*, 263 Mont. 386, 869 P.2d 256 (1994), for the proposition that reasonableness is a jury question. *See* Dissent, ¶ 71. Oddly, the Dissent does not discuss *Redies*, in which we expressly concluded that the general rule stated in *Dean* did not apply when the insurer raises a "reasonable basis in law" defense because questions of law are resolved by the courts, reflecting "the principle

38

that the jury does not decide or determine the law." *Redies*, ¶ 35; *see also White*, ¶ 24. While the issue did go to the jury in *Palmer by Diacon*, coverage there was denied because of *factual* disputes about the underlying accident that required resolution by the trier of fact. *Palmer by Diacon*, 261 Mont. at 102, 861 P.2d at 902 ("In this case, Farmers contested liability, contending that Palmer's accident was not caused by another motorist, and therefore, Palmer's uninsured motorist policy did not cover the accident."). *Ellinghouse* is likewise consistent with our analysis. There, we held it was error for Ellinghouse to introduce evidence and argue to the jury on the question of whether the insurer had a reasonable basis in law defense, but concluded the error was harmless in light of other circumstances. *Ellinghouse*, 223 Mont. at 251, 725 P.2d at 224-25. None of our cases declare this issue of law to be a jury question, and *Redies* clearly resolved any doubt on the issue. Factual disputes affecting coverage are certainly decided by the trier of fact, and this opinion does not change that. Here, there were no such disputes of material fact.[10]

---

[10] Of note, the Dissent relies heavily on the fact that State Farm revised its policy language after this claim was made to urge reversal. *See* Dissent, ¶¶ 67, 69. However, there is no indication in the record that State Farm's subsequent language revision, which was applicable prospectively to future claims, was done as a result of this claim. Courts must be cautious about permitting evidence of post-claim actions to assess the reasonableness of claim decisions when no relation to the claim has been demonstrated. To do otherwise would prompt speculation and raise questions of relevance and prejudice. The question turns on an analysis of "the legal landscape as it existed during the relevant time period." *Redies*, ¶ 29. In any event, State Farm's post-claim actions here did not change the clear authority that existed in favor of State Farm's interpretation of its policy at the time of the claim, and do not raise a material fact prohibiting summary judgment on this issue.

¶56 *3. Did the District Court err in granting summary judgment to State Farm on the Unfair Trade Practices Act claims?*

¶57 Frank argues that the District Court erred by dismissing the UTPA claims because the "reasonable basis in law" defense does not apply to the particular provision of the UTPA he is claiming State Farm violated—§ 33-18-201(1), MCA. State Farm responds that the defense does apply to that provision of the UTPA, and the District Court correctly dismissed the claims.

¶58 Montana's Unfair Trade Practices Act prohibits insurers from practicing certain claims-settlement practices. Subsection (1) of § 33-18-201, MCA, makes it illegal for an insurer to "misrepresent . . . insurance policy provisions relating to coverages at issue[.]" "An insured or a third-party claimant has an independent cause of action against an insurer for actual damages" if the insurer violates subsection (1) and "misrepresents" the insurance policy. *See* § 33-18-242(1), MCA. However, an "insurer may not be held liable under this section if the insurer had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue." Section 33-18-242(5), MCA; *Lorang*, ¶ 116 ("Before analyzing these claims, we note that our statutory law provides the insurer with an affirmative defense whereby it may avoid liability in a UTPA action if it 'had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, whichever is in issue.'") (citing *Redies*, ¶ 28, and quoting § 33-18-242(5), MCA).

¶59 Based on the plain language of § 33-18-242(5), MCA, State Farm cannot be held liable for violating the UTPA if it had a "reasonable basis in law" for contesting the claim. As noted above, we conclude that State Farm indeed had a reasonable basis in law to interpret its Limit of Liability clause in the manner it did. Therefore, the District Court did not err in granting summary judgment to State Farm on Frank's and Vail's UTPA claims.

¶60 *4. Did the District Court err by concluding State Farm waived its statute of limitations affirmative defenses?*

¶61 On cross appeal, State Farm challenges the District Court's ruling that it waived the limitation defense. Citing M. R. Civ. P. 8(c), the District Court rejected State Farm's statute of limitations defense because State Farm failed to raise that affirmative defense in its answer to Frank's and Vail's 2008 counterclaims to State Farm's coverage action. State Farm asserts error, arguing that Frank's and Vail's 2011 amended counterclaims "superseded any previously filed counterclaims" which permitted State Farm to raise the statute of limitations defense anew.

¶62 We decline to reach this issue. In the District Court and on appeal, State Farm asserted the statute of limitations defenses for common-law bad faith, covenant of good faith and fair dealing, and the UTPA claims, but did not assert the defense for the breach of contract claim. Because we have held in State Farm's favor on the claims for which State Farm asserted the defense, we need not address the issue. *See Caldwell v. Sabo,*

41

2013 MT 240, ¶ 5, 371 Mont. 328, 308 P.3d 81 (declining to address second issue because first issue was dispositive).

¶63 Affirmed in part, reversed in part, and remanded for further proceedings consistent therewith.


/S/ JIM RICE


We concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ BRIAN MORRIS


Justice Patricia O. Cotter concurs and dissents.

¶64 I concur with the Court's disposition of Issue One. I would reverse and remand Issues Two and Three for trial.

¶65 Issue Two presents the question of whether the District Court erred in granting summary judgment to State Farm on the common-law bad faith and breach of the covenant of good faith and fair dealing claims presented by Frank. Frank asserts two claims. In his first-party claim, in which he stands in the shoes of Vail pursuant to assignment, Frank argues that State Farm breached its duty of good faith and fair dealing to Vail, by refusing to accept Frank's reasonable demand to settle Alicia's claims against Vail for the additional $50,000 available under the policy. He presents a similar third-party claim on behalf of Heath's estate and Alicia. The Court

agrees with the District Court's conclusion that summary judgment was appropriate because State Farm had a reasonable basis in law to contest coverage.

¶66 Frank points out that by refusing to accept his demand, and by offering only $5,000 and refusing to further negotiate, State Farm put Vail in jeopardy of having an excess judgment entered against her. Vail asked State Farm to defend her in the underlying liability suit and indemnify her without limits, both of which State Farm refused to do. In fact, in a letter written to Vail in 2008, State Farm not only refused to indemnify her, but also indicated it would not pay for the defense of the declaratory judgment action that it had filed against her. Frank further points out that it was almost three years after he made a demand for the limits of liability upon State Farm that the company even began considering the filing of a declaratory judgment action.

¶67 In addition to the foregoing, it bears noting that in 2006, a year *before* it filed its declaratory action defending its limits of liability clause in the *Freyer I* litigation, State Farm amended its automobile policies in Montana to remove the key phrase in the limits of liability clause that reads "sustained by such other persons who do not sustain bodily injury." This fact was not disclosed to Frank or Vail at all until December 2011 and only then because State Farm was asked in discovery to produce the text of the "Limits of Liability" clauses it had used both before and after the issuance of Freyer's policy.

¶68 The Court errs in its analysis of Issue Two in two major respects. First, it focuses solely on the question of whether State Farm had a reasonable basis in law to contest coverage. It apparently concludes that the question of whether State Farm refused to settle within policy limits where liability is reasonably clear is wholly subsumed within the "reasonable basis in law" analysis. The questions are related but nonetheless distinct. There is no question of Vail's liability for the accident. Where liability is reasonably clear, an insurer has an obligation to

43

attempt to settle within policy limits so as to protect its insured from the prospect of a judgment in excess of policy limits. *Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122, ¶ 25, 315 Mont. 519, 70 P.3d 721. A reasonable jury could conclude that by refusing over a period of three years to budge from a $5,000 offer under the foregoing circumstances, State Farm breached its obligation to attempt settlement within policy limits, thus placing its insured in jeopardy. The Court cites *Jessen* with approval in ¶ 46, but then disregards the very point of the discussion: the question of whether an insurer acted in "good faith" is to be made on a case-by-case basis. As noted below, the question is one of fact, not law.

¶69    Second, the Court errs in construing all facts in favor of State Farm in reaching its conclusion that State Farm had a reasonable basis in law to contest coverage. It presumes throughout its analysis that State Farm acted in complete good faith, weaving into the Opinion an analysis of our case law so as to justify the amended language that State Farm added to its "each person" limit—language which this Court later interpreted against it. Noticeably, however, the Court does not even address the fact that State Farm again amended its automobile policies in Montana a year before filing this declaratory action, so as to remove the key phrase from its limits of liability clause. Given the timing of this policy revision, and the fact that it occurred while State Farm was steadfastly refusing to negotiate with Frank, a reasonable jury could certainly conclude that State Farm made the conscious decision to change its policy midstream because it concluded it may *not* have a reasonable basis in law for contesting such claims after all.

¶70    On summary judgment, a court should not be weighing the evidence or choosing one disputed fact over another. *Cole v. Valley Ice Garden, L.L.C.*, 2005 MT 115, ¶ 4, 327 Mont. 99, 113 P.3d 275. This covert policy change in the midst of a settlement standoff plays an important

44

role in Freyers' argument that State Farm engaged in bad faith. The Court errs in choosing to wholly disregard this significant factor and the potential bearing it could have on a jury's analysis of State Farm's reasonableness.

¶71 Unfortunately, making reasonableness determinations at the summary judgment stage is becoming a trend. In *White* (Cotter, J., concurring and dissenting), we upheld summary judgment in favor of State Fund, concluding that White's bad faith claims must fail because State Fund had a reasonable basis in law for terminating his benefits. In so doing, we ignored a time-honored premise. *White*, ¶ 28. In *Dean v. Austin Mut. Ins. Co.*, 263 Mont. 386, 389, 869 P.2d 256, 258 (1994), we said that "reasonableness is generally a question of fact; therefore, it is for the trier of fact to weigh the evidence and judge the credibility of the witnesses in determining whether the insurer had a 'reasonable basis' for denying a claim." As in *White*, we again ignore *Dean's* caution by concluding here that reasonableness is susceptible to determination on summary judgment, and by selecting the facts that support our conclusion.

¶72 The Court cites three cases for the proposition that an insurer cannot be held liable for bad faith if the insurer had a reasonable basis for contesting the claim. Opinion, ¶ 55. *White* is one of those cases. In the other two cases we cite—*Ellinghouse* and *Palmer by Diacon*—the question of whether the insurer engaged in bad faith was resolved by a jury. Though the verdict in favor of Palmer was reversed on other grounds, we stated in *Palmer* that the district court did not err "by concluding that reasonable people could draw different conclusions about whether Farmers' had a reasonable basis for contesting Palmer's claim." *Palmer*, 261 Mont. at 104, 861 P.2d at 903. As in *White*, I again maintain here that while reasonable people could ultimately determine that State Farm had a reasonable basis for denying a claim, they could also conclude to the contrary. The point is that the reasonableness of State Farm's conduct is for the trier of

45

fact to determine. I would therefore reverse and remand for a jury's determination Freyers' common-law bad faith claims and their claims that State Farm breached the covenant of good faith and fair dealing.

¶73 Finally, as to Issue Three, I conclude consistent with the above analysis that the Court also errs in upholding summary judgment on the UTPA claims. I would reverse and remand the UTPA claims for trial.

¶74 I therefore concur and dissent.

/S/ PATRICIA COTTER

Justice Michael E Wheat joins the Concurrence and Dissent of Justice Patricia O. Cotter.

/S/ MICHAEL E WHEAT